UNITED STATES *v.* HAMMEL, RIGLANDER & CO. ET AL. (No. 3008[1])

38

United States Court of Customs Appeals, April 9, 1928

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Herbert M. Wallace* of counsel) for appellees.

[Oral argument February 7, 1928, by Mr. Kavanagh and Mr. Wallace]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Watch crystals imported from France were reappraised at their invoice value, less a trade discount of 15 per centum and a discount for cash of 1 per centum. That decision was affirmed on appeal to the United States Customs Court. From the judgment of the United States Customs Court, affirming the reappraised value, an appeal was taken by the Government to this court. In support of that appeal it is contended, first, that the discount of 15 per centum was allowed to three classes of wholesalers and that the amount of discount depended upon the quantity imported by the wholesaler for a period of one year; second, that a 15 per centum discount was given to purchasers who bought a yearly total of 2,000,000 watch crystals and that that discount was not given in the ordinary course of trade or for the usual wholesale quantity. The Government does not question the invoice prices or the importer's right to deduct therefrom the discount for cash, but does contend that 15 per centum should not have been deducted from invoice prices to make appraised value.

At the hearing on reappraisement Moses M. Riglander testified on behalf of the importers that he had been an importer of watch crystals for 31 years; that the invoice price, less a discount of 1 per centum and 15 per centum, was the price paid for the imported merchandise and that said discounts are noted on the invoices; that from the year 1919 until November, 1921, the witness was allowed discounts from list prices of 3 per centum, 15 per centum, and 20 per centum; that from November, 1921, to May, 1924, the discounts allowed were 3 per

centum, 10 per centum, and 15 per centum; that ever since May, 1924, the discounts allowed from the list prices of watch crystals were 1 per centum and 15 per centum; that ever since 1919 the witness has been given the discount of 15 per centum and that until February, 1925, his imported watch crystals were appraised at the port of New York with an allowance of 15 per centum discount; that the 15 per centum discount does not appear on the *price list because it is a wholesale trade discount and because the price list is circulated among the retail trade; that the wholesale price of watch crystals is 15 per centum less than the retail price and the price to small consumers; that only wholesalers get the 15 per centum reduction from list prices;* that in some instances wholesale quantity might mean 10,000 gross and in other instances only 100 gross; that only wholesalers get the 15 per centum discount, which is the regular trade discount to the United States, France, England, Germany, and other countries; that jobbers are sometimes wholesalers, but, whether jobbers are wholesalers or not, they do not get a lower price than wholesalers; that the dollar prices of the invoices converted into francs were about 50 per centum higher than the French list prices.

Henry Lorsch, a witness on behalf of the importers, testified that his firm was an importer of watch crystals and watchmakers' supplies and tools and had purchased watch crystals from the Verreries Unies for about 25 years; that from September, 1919, until some time in October, 1920, the discount allowed by the factory was 15, 20, and 3 per centum; that from October, 1920, until May, 1924, the discount was 15 and 3 per centum, and that ever since May 1, 1924, the discount has been 15 and 1 per centum; that his firm imported watch crystals from the factory in France *every week or two and that the firm paid for such importations the list price thereof less the discount of 15 and 1 per centum;* that until February or March, 1925, the discount of 15 per centum was always allowed by the appraisers, but that since February or March, 1925, they have refused to deduct from invoice prices the discount of 15 per centum; that watch crystals differ in price, size, and kind; that manufacturers send their price lists to wholesalers and do not send such lists to anyone who may write for them; that the 15 per centum discount is a trade discount.

Alphonse V. Walter testified for the importers that he was a member of the firm of Albert Berger & Co., wholesale importers of watch crystals and optical goods; that his firm purchased watch crystals from the Verreries Unies and had been buying such watch crystals for 25 years; that since 1924 Albert Berger & Co. have been allowed a discount from list prices of 15 and 1 per centum; that prior to that year the firm was allowed 15 and 3 per centum; that in the year 1919 a discount of 20, 15, and 3 per centum went into effect; that that discount was changed to a discount of 15 and 3 per centum and subsequently to 15 and 1 per centum; that until March, 1925, imported watch crystals

were appraised correctly; that Hammel, Riglander & Co. were wholesale importers of watch crystals.

The affidavit of Alfred Sifertt, claim agent and director of the Verreries Unies, was admitted in evidence and from that affidavit it appears that the Verreries Unies sold 2,412,000 watch crystals in the year 1924 to three classes of trade in France, namely, first, individuals and concerns maintaining a permanent establishment with a stock on hand for the resale of watch crystals; second, to commissionaires for consumers; and third, to dealers who sold direct to consumers and not for resale; that to the first class 2,004,770 watch crystals were sold at list price less a discount of 15 and 1 per centum; that to the second class only 23,230 watch crystals were sold at list price less a discount of 1 per centum for cash and 5 per centum buying commission; that to the third class 384,000 watch crystals were sold at the list price less a discount of 1 per centum for cash; that 90 per centum of the entire sales in France during the year 1924 were made by the Verreries Unies with a discount of 15 and 1 per centum from list prices and that those methods of selling, prices, and discounts prevailed in the year 1925.

On behalf of the Government the unsworn report of the customs representative in Paris, dated November 5, 1924, was introduced in evidence, from which it appears that Simon Schulz, manager of the Verreries Unies, stated to the customs representative on October 1, 1924, that the Verreries Unies sold, in 1922, 6,000,000 francs worth of watch crystals, of which amount 1,300,000 francs represented the purchases of two firms in France, 2,170,000 francs the value of purchases made in the United States, 900,000 francs the value of purchases in England, and 1,630,000 francs the amount purchased by all other countries; that the Verreries Unies sold in France to F. Moynet and J. Moulle and to no other jobbers; that both firms were allowed a discount of 15 and 1 per centum; that other jobbers and very small dealers buy from Moynet and Moulle and that such small jobbers get no discount; that in other countries than France the small dealers get 10 per centum discount *on an annual amount of 500,-000 francs;* that a few watch crystal factories in France sell cheaper than the Verreries Unies; that jobbers in countries other than France who buy to resell get a discount of 15 per centum because it is known that they buy more than 500,000 francs worth of crystals per year and, therefore, they are allowed the discount of 15 per centum; that the *10 per centum* discount is allowed *at the end of the year* and then only in case that it is shown that the purchaser has bought 500,000 francs worth during the year; that small jobbers get the 10 per centum discount because they really buy watch crystals to the value of 500,000 francs per year; that those who get the 10 per centum are small dealers and seldom buy 500,000 francs worth of crystals per year; that small dealers, therefore, rarely receive the 10 per centum rebate.

The report of the assistant customs representative at Paris, dated April 15, 1926, states that the general manager of the Verreries Unies told the customs representative that the Verreries Unies sold watch crystals at wholesale for home consumption and that the whole-sale prices for home consumption from May 1, 1924, to December 21, 1925, were shown on price lists; *that the terms for home consumption and for exportation to the United States and other countries were as follows: a discount of 15 per centum to jobbers plus 1 per centum discount for cash in 30 days;* that the discount of 15 and 1 per centum was allowed only to jobbers known to do an annual amount of business of 200,000 francs but that *the discount of 15 per centum was deducted from each invoice;* that the customers of the firm were classified as jobbers with stock, jobbers without stock, and dealers in supplies, commissionaires, and exporters; that jobbers with stock received a discount of 15 per centum; jobbers without stock 10 per centum; and dealers in supplies, commissionnaires, and exporters received 5 per centum; that the jobbers with stock in France were Moynet and Moulle; in Germany Fucks, Bullnheimer, Flume, Jacob, Ludwig & Fries; in England Walter Berger & Co., and Henri Picard & Freres; in the United States Hammel, Riglander & Co., Sussfeld, Lorsch & Co., Albert Berger & Co., Semon Bache & Co.; in Italy Aschieri; that the jobbers in France without stock were Roussel-Simonin; in Switzerland Le Globe, Kreutter, Jeanneret, Salzmann, Flury, Droz, and Welter; that Hammel, Riglander & Co., Sussfeld, Lorsch & Co., and Albert Berger & Co. bought during the years 1924 and 1925 more than 200,000 francs worth of merchandise and received the discount of 15 and 1 per centum; that on the first of January, 1926, Semon Bache & Co. was added to the list of American purchasers entitled to the 15 and 1 per centum discount.

From the unsworn report of the customs representative at Paris dated August 18, 1926, it appears that the customs representative was informed by the manager of the Verreries Unies that a wholesaler with stock would not be given the discount of 15 and 1 per centum unless he agreed to buy yearly at least 200,000 francs' worth of watch crystals; that the Verreries Unies had to be satisfied of the solvency of the firm, and that they would do at least 200,000 francs' worth of business yearly before the discounts of 15 and 1 per centum would be granted; that wholesalers with stock, each of whom regularly buy at least 200,000 francs' worth of watch crystals yearly serve to keep all the firms represented by the Verreries Unies running and thus enable such firm to maintain their workers, who are extremely hard to find; that the Verreries Unies allowed the 15 per centum discount *to any firm in any country providing said firm agreed to do an annual business of at least 200,000 francs;* that should any wholesaler be ready to agree to buy an annual amount of 200,000 francs' worth of watch crystals the

15 per centum discount would be granted on his purchases provided the firm was satisfied that he was financially responsible; that purchases made by wholesalers with stock largely exceed 200,000 francs a year; that the number of wholesalers entitled to the 15 per centum discount is not restricted, and that any wholesaler who satisfied the Verreries Unies that he will purchase the minimum of 200,000 francs' worth of crystals a year is entitled to the discount of 15 per centum; that the discount of 15 per centum allowed to such wholesalers is small compared with the discount of 10 per centum allowed to purchasers who have no stock and who simply act as intermediaries, taking no risk whatever and making a profit on their sales of at least the discount granted by the Verreries Unies; that no American firms are stockholders in the Verreries Unies.

The evidence establishes without contradiction that all buyers of watch crystals in France or in any other country had the right to buy and could buy watch crystals from the Verreries Unies on equal terms and that the 15 per centum discount was granted on identically the same conditions to all purchasers of watch crystals whether in France or abroad. According to the report of the customs representative, France had only one jobber without stock and Switzerland seven. Germany, England, and the United States had no jobbers without stock, and every one of the jobbers of those countries with stock received on each invoice the trade discount of 15 per centum. That discount was not paid at the end of the year, but was allowed on *each invoice to every wholesale dealer, whether in France or out of it.* It can not be said, therefore, that the market in France, whether for home consumption or for exportation, was not a free, open market to all comers who were financially responsible and who agreed to do an annual business which would warrant the allowance of a discount of 15 per centum. The testimony in the case and the 38 invoices introduced in evidence prove that the 15 per centum was not given at the end of the year's business but was allowed on each invoice and was deducted from the total price of each invoice. The record discloses that there were four separate and independent firms in the United States who purchased watch crystals from the Verreries Unies in France, and every one of them was allowed the trade discount of 15 per centum. That fact makes it evident that there was no understanding or agreement to give a monopoly of the watch crystal business to any American wholesale or other concern or to prevent the importation of watch crystals by any American importer who was willing to buy watch crystals on the same terms as those imposed on buyers in France, in the United States, and elsewhere.

From five invoices covering importations made by Albert Berger & Co. in 1925 and 1926 it appears that that company's importations were as low as 92 gross and as high as 635 gross. The 24 importations

made by Hammel, Riglander & Co. in 1925 and 1926 ranged from 95 gross to 6,761 gross. The importations of Sussfeld, Lorsch & Schimmel in 1925 and 1926 ran from 68½ gross to 253 gross.

The evidence is uncontradicted that the trade discount of 15 per centum is allowed only to wholesalers, and as wholesalers are those who buy and sell goods in wholesale quantities, it must be presumed, in the absence of any evidence to the contrary, that they purchased their goods from the Paris firm in wholesale quantities, especially as the discount of 15 per centum was allowed to them. If there had been a sliding scale of discounts allowed to wholesalers the question of what was the usual wholesale quantity might well be considered to have been raised. As the evidence is positive that only wholesalers get 15 per centum reduction, it can not well be argued that the importers in this case who received the 15 per centum allowance on each importation did not purchase in the usual wholesale quantities and in the ordinary course of trade.

Justice Sullivan, sitting in reappraisement, held on the evidence that the invoice and export value of the merchandise was higher than the domestic value and that the discount of 15 and 1 per centum was allowed to every purchaser exporting merchandise from France. As the allowance of the 15 per centum discount is virtually the only question raised by the appeal we must hold that the findings are supported by substantial evidence and are sufficient to sustain the judgment.

The judgment of the United States Customs Court is *affirmed*.