UNITED STATES *v.* A. W. FABER, INC. (No. 3618) [1]

---

[1] T.D. 46819.

United States Court of Customs and Patent Appeals, November 28, 1933

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Jerome G. Clifford* for appellee.

[Oral argument October 11, 1933, by Mr. Lawrence and Mr. Clifford]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in a number of reappraisements under the Tariff Act of 1930, which reappraisements, by stipulation in the trial court, were consolidated and tried together.

The merchandise involved consists of lead pencils imported from Germany, which were appraised by the local appraiser at Newark, N.J., at invoice unit prices, less discounts of 20 per centum and 3 per centum.

Appellee appealed to reappraisement, claiming that the dutiable value of the merchandise was the invoice price less discounts of 20 per centum, 3 per centum, and 5 per centum.

Upon the trial before the single judge sitting in reappraisement, it was established that there was no export value of the merchandise.

The trial court affirmed the value found by the local appraiser; appellee appealed to a division of the United States Customs Court, and upon such appeal the Third Division of said court reversed the judgment of the trial court and found the dutiable value to be the foreign value claimed by appellee, viz, the unit invoice prices less discounts of 20 per centum, 3 per centum, and 5 per centum.

In the decision appealed from the court made the following formal findings of fact:

1. That the merchandise herein consists of ordinary pencils and similar stationery goods, imported from Germany, having been exported therefrom during the period from August, 1930, to July, 1931.

2. That the record fails to show any export value for the merchandise, but does establish a foreign value as defined by section 402 (c) of the Tariff Act of 1930.

3. That the prices at which such or similar merchandise to that involved herein was freely offered for sale on the dates of exportation herein, to all purchasers in the principal markets of Germany in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the list prices less 20 per centum, 3 per centum, and 5 per centum, plus cases.

4. That the foreign market value of the merchandise here in controversy is as set forth in paragraph 3 of these findings of fact.

As the basis for these findings the court held:

The weight of the evidence in the record before us establishes that in the ordinary course of trade in the principal markets of Germany during the period here involved, usual sales by manufacturers of this merchandise to wholesale dealers were made in quantities of 25 gross or more, the majority of which were in quantities amounting to reichsmarks 3,000 delivered over a period of one year with "no specified quantity per order or delivery"; that practically all sales were made to wholesale dealers, those to retailers being exceptional and usually in quantities of less than 25 gross; that upon sales amounting to reichsmarks 3,000 or more per year discounts of 20 per centum, 3 per centum, and 5 per centum were allowed from the list prices of the merchandise; and that the majority of the sales of the manufacturer herein were made under those terms.

\* \* \* \* \* \* \*

\* \* \* The evidence before us does not show that the extra 5 per centum discount is granted for quantities greater than usual wholesale quantities, as found by the court below; but on the contrary, it is established without contradiction that it is the *usual discount* allowed on the *major portion of the sales* in wholesale quantities, and that it is not a deferred discount, but *may be deducted from each invoice*, if the purchaser so desires.

There is no doubt that there is substantial evidence in the record supporting the holding of the court, above quoted, and as we view it, the question before us is whether, as a matter of law, the facts so found by the court, upon which its formal findings of fact were based, warranted the deduction of the additional 5 per centum in arriving at the foreign value of the merchandise.

Section 402 (c) of the Tariff Act of 1930, so far as is here pertinent, reads as follows:

SEC. 402 (c). FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade * * *.

The question of law presented is whether the restriction of the allowance of the 5 per centum discount to those purchasing merchandise to the extent of reichsmarks 3,000 per year prevents such discount from being considered in determining the foreign value of the merchandise.

It is our opinion that, under the facts found by the appellate division, the sales to retailers were properly eliminated, such sales being exceptional and usually in quantities of less than 25 gross. We think the fair inference from the evidence in the record is that in the usual course of trade in Germany these pencils were not sold or offered for sale to retailers in the usual wholesale quantities, and the trial court committed no error in so finding.

It is, however, clear from the language above quoted from the decision of the lower court that it found that there were two classes of wholesalers who purchased in the usual wholesale quantities, and in the ordinary course of trade, pencils similar to those here involved, and to one class only ·as the additional 5 per centum discount allowed, viz, wholesale dealers whose purchases amounted to reichsmarks 3,000 or more per year; but wholesale dealers whose purchases per year amounted to less than this sum were not allowed the additional 5 per centum discount. It is true that the lower court found that the majority of the sales of the manufacturer were made to those receiving this additional discount.

In its decision the lower court said:

We believe that the issue in these cases is controlled by the decision in *United States* v. *Hammel, Riglander & Co.*, 16 Ct. Cust. Appls. 37, T.D. 42716, involving the dutiable value of watch crystals imported from France, wherein it was shown that all wholesale purchasers who satisfied the manufacturer that they would purchase a minimum of 200,000 francs worth of crystals per year were granted a discount of 15 per centum from the list prices. The appellate court held that the dutiable value of the merchandise therein was the list price less 15 per centum discount, after commenting on the fact that the discount was granted on the same conditions to all purchasers, and deducted on each invoice, and stating:

It can not be said, therefore, that the market in France, whether for home consumption or for exportation, was not a free, open market to all comers who were financially responsible and who agreed to do an annual business which would warrant the allowance of a discount of 15 per centum.

We are frank to say that in the case at bar the lower court was justified in considering our decision in the case last above cited as

controlling their decision herein, and we should affirm said decision if we now approve the holding of this court in *United States* v. *Hammel, Riglander & Co.*, 16 Ct. Cust. Appls. 37, T.D. 42716.

It appears from the opinion in that case that the question of the allowance of a 15 per centum discount in arriving at foreign and export values of certain watch crystals was in issue; that such discount was allowed only to wholesalers who would agree to purchase, during the course of a year, crystals having at least an aggregate value of a specified amount, and that wholesalers doing less than the specified amount of business did not receive the 15 per centum discount, although such wholesalers purchased in the same usual wholesale quantities as did wholesalers who received the 15 per centum discount.

In the opinion in said case this court said:

> The evidence establishes without contradiction that all buyers of watch crystals in France or in any other country had the right to buy and could buy watch crystals from the Verreries Unies on equal terms and that the 15 per centum discount was granted on identically the same conditions to all purchasers of watch crystals whether in France or abroad. According to the report of the customs representative, France had only one jobber without stock and Switzerland seven. Germany, England, and the United States had no jobbers without stock, and every one of the jobbers of those countries with stock received on each invoice the trade discount of 15 per centum. That discount was not paid at the end of the year, but was allowed on *each invoice to every wholesale dealer, whether in France or out of it.* It can not be said, therefore, that the market in France, whether for home consumption or for exportation, was not a free, open market to all comers who were financially responsible and *who agreed to do an annual business which would warrant the allowance of a discount of 15 per centum.* The testimony in the case and the 38 invoices introduced in evidence prove that the 15 per centum was not given at the end of the year's business, but was allowed on each invoice and was deducted from the total price of each invoice. The record discloses that there were four separate and independent firms in the United States who purchased watch crystals from the Verreries Unies in France, and every one of them was allowed the trade discount of 15 per centum. That fact makes it evident that there was no understanding or agreement to give a monopoly of the watch crystal business to any American wholesale or other concern or to prevent the importation of watch crystals by any American importer who was willing to buy watch crystals on the same terms as those imposed on buyers in France, in the United States, and elsewhere. (Second italics ours.)

The court further said:

> The evidence is uncontradicted that the trade discount of 15 per centum is allowed only to wholesalers, and as wholesalers are those who buy and sell goods in wholesale quantities, it must be presumed, in the absence of any evidence to the contrary, that they purchased their goods from the Paris firm in wholesale quantities, especially as the discount of 15 per centum was allowed to them. If there had been a sliding scale of discounts allowed to wholesalers the question of what was the usual wholesale quantity might well be considered to have been raised. As the evidence is positive that only wholesalers get 15 per centum reduction, it can not well be argued that the importers in this case who received the 15 per centum allowance on each importation did not purchase in the usual wholesale quantities and in the ordinary course of trade.

It appears from the foregoing that the watch crystals there involved were not freely offered for sale to all purchasers in the usual wholesale quantities, and in the ordinary course of trade, at a discount of 15 per centum from the list price, but that such offers and sales were limited to those who would agree to make purchases aggregating a minimum amount during a year.

We have carefully considered the opinion in said case, and are now convinced that the court was in error in holding that a discount allowed under the facts there found could be considered in arriving at either foreign or export value.

We would observe, in passing, that said decision was rendered under the Tariff Act of 1922, but the language of sections 402 (b) and 402 (c) of said act was identical, so far as is here relevant, with the language of sections 402 (c) and 402 (d) of the Tariff Act of 1930.

The law is explicit that foreign value of imported merchandise shall be the market value or the price at the time of exportation to the United States at which such or similar merchandise is freely offered for sale to *all* purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, plus other elements specified in section 402 (c), *supra*.

How can it be said that the merchandise in the case at bar was freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade at a discount of 5 per centum from the list price of the merchandise when, as found by the trial court, only a part of such purchasers in the usual wholesale quantities and in the ordinary course of trade were offered such discount, viz, those who would agree to purchases aggregating in value a specified minimum amount per year? It is clear to us that section 402 (c) does not permit the allowance of the 5 per centum discount here involved under the facts found by the lower court.

It is true that the appellate division of the Customs Court found that a majority of the sales made by the manufacturer were to firms entitled to the 5 per centum discount, but that is only saying that a *majority* of those purchasing in the usual wholesale quantities and in the ordinary course of trade, received said discount, while, to conform to the statute defining foreign value, the discount must be offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.

It is also true that we have held that, in determining what are *usual* wholesale quantities, the major portion of the sales or offers for sale in wholesale quantities should be the criterion, but it does not follow from that fact that a discount from list or invoice prices should be allowed in arriving at foreign value if it is shown that only a majority of the purchasers in the usual wholesale quantities, and in the

usual course of trade, receive such discount. The statute reads *all* purchasers, not a majority of the purchasers. *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T.D. 42216; *United States* v. *A. S· Neuberger and American Glanzstoff Corp.*, 19 C.C.P.A. (Customs) 96, T.D. 45241.

We regret that we find it necessary to reverse the appellate division in this case when, in arriving at its decision, it properly followed and was guided by a decision of this court. We reverse it only because we now disapprove the holding of this court in the case of *United States* v. *Hammel, Riglander & Co.*, *supra*, insofar as it holds that a discount not allowed to all purchasers in the usual wholesale quantities, and in the ordinary course of trade, may be considered in arriving at either foreign or export value of imported merchandise.

The decision of the Third Division of the United States Customs Court is *reversed*, and the cause is *remanded* for further proceedings consistent with the views herein expressed.