(A. R. D. 23)

UNITED STATES *v.* BLAKE-MOFFITT & TOWNE, INC. (BORDER BROKERAGE CO.), ET AL.

BLAKE-MOFFITT & TOWNE, INC. (BORDER BROKERAGE CO.), ET AL. *v.* UNITED STATES

Entry No. 2959–E, etc.

## Second Division, Appellate Term

(Decided May 14, 1953)

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *John J. Antus*, special attorneys), for the United States.
*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the importers.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating; RAO, J., concurring

FORD, Judge: These are applications for review of the decision of the trial court (Reap. Dec. 8064) filed under the provisions of 28 U. S. C., section 2636 (a). The Government filed the original application on December 20, 1951, in which it assigned 13 errors in the decision and judgment of the trial court. Thereafter, within the proper time, the importers filed a cross-appeal in which they assign two errors in the decision and judgment of the trial court. It is not deemed necessary to a proper disposition of this case to quote these assignments *in haec verba*.

The merchandise consists of two brands or types of toilet tissue, one known as "Westminster," which was entered at $4.98 per case, United States currency, f. o. b. mill at New Westminster, British Columbia, and was appraised at $6.11 per case, Canadian currency, net, packed. The other type, known as "Purex," was entered at $6.81 per case, United States currency, f. o. b. mill, and was appraised at $8.33⅓ per case, Canadian currency, net, packed.

The trial court determined that foreign value was the proper basis upon which to find a value for the involved merchandise, and upon that basis found a value of $5.24 per case for "Westminster" and a value of $7.17 per case for "Purex," Canadian funds, net, packed, basing these values upon the prices charged by the manufacturer to the distributors in Canada.

The Government contends that the market for both types of this toilet tissue between the manufacturer and the distributors was a restricted market and that the price thus charged and received cannot be considered in finding a value for this merchandise, and that, therefore, the prices at which the distributors sold the merchandise to the retailers for resale, which were equal to the appraised values, represent the foreign market value of this merchandise.

It is the contention of the importers that the entered values represent the correct export values, or, if it be found that there was a foreign market for this merchandise, then such foreign values were the

prices charged by the manufacturer to its distributors in Canada, or the prices at which a distributor of competitive brands offered and sold such merchandise to all purchasers in Canada.

The trial court, in holding that it was first necessary to determine the existence or nonexistence of a foreign value for this merchandise, stated as follows:

\* \* \* In this connection, it is undisputed that the manufacturer of the paper involved, \* \* \* offered its products for sale both for home consumption and for export only to persons or firms known as "distributors," in which category were wholesale paper dealers and wholesale grocers.

In exhibit 3, being a report of an assistant supervising customs agent, the following statement is made:

Westminster Paper Co., Ltd., produces numerous paper products, including two grades of toilet tissue, "Purex" and "Westminster," but does not offer any of these products to buyers in general—only to so-called "distributors", who may be in fact jobbers, wholesalers, or large retailers. Before being able to buy, an intending buyer must be accepted on the seller's list of "distributors", eligibility for which depends on whether probable purchases will be large enough to warrant the mill in dealing with him.

Exhibit 4, being another report by the same customs agent, contains the following:

In an endeavor to ascertain the principal local distributor, as a source of the requested information on resale prices, Messrs. Radcliff & Matthison, of the mill, were consulted on September 8, 1947. In the course of the conversation, they drew attention to a misapprehension embodied in our report of June 30, 1948, which states on page 3 that export business, like domestic business, is confined to accepted "distributors". While this is true of certain countries where "distributors" have been appointed, it is not true of the United States. · Any one in the United States may buy freely, the only restriction being that he must order a carload. [The date, September 8, *1947*, in the above quotation, is evidently a typographical error and should be September 8, *1948*.]

In view of the fact that sales and offers for sale of the involved merchandise to purchasers in the United States were restricted by the manufacturer to those who purchased in carload lots, the evidence establishes that the manufacturer of the involved paper did not freely offer its products for sale for export, within the meaning of section 402 of the Tariff Act of 1930. In offering and selling the involved merchandise for home consumption, the manufacturer offered and sold its products only to persons or firms known as "distributors," in which category were wholesale paper dealers and wholesale grocers.

These facts bring this case squarely within the principles announced by the Court of Customs and Patent Appeals in *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436, insofar as is here concerned the prices which the manufacturer charged to and received from the wholesale paper dealers and wholesale grocers. In the *Robinson* case, *supra*, it was held as follows:

We agree with the contentions of the Government that the sales price of the wholesalers to the tie manufacturers should be accepted as the foreign value. It may be, as is contended by the importer, that it is the "ordinary course of trade" between the manufacturer and the wholesaler to restrict the sales to wholesalers, but this is not the ordinary course of trade to which the statute refers. It must be remembered that the statute provides for "the ordinary course of trade" in which such or similar goods are "freely offered for sale to all purchasers" in the usual wholesale quantities. Since in the sales by the manufacturers the goods were not offered to all purchasers, the sales price should not be accepted as the proper foreign value. In the *Richard & Co.* case, *supra* [15 Ct. Cust. Appls. 143, T. D. 42216], this court had before it a question quite similar to the one at bar and said:

> * * * Even if it be conceded that the *ordinary course of trade* may be determined by the usage in a minor fraction thereof, it certainly can not be said that merchandise is being *freely offered for sale* when it is offered to certain purchasers only, and these purchasers, ones who have "*satisfied*" the seller that they are wholesalers only. * * * (Italics quoted.)

> \*      \*      \*      \*      \*      \*      \*

> It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price to *wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy. (Italics quoted.)

The principles governing a controlled market, so clearly and logically announced in the *Robinson* case, *supra*, have not been reversed or modified, and we, therefore, accept that decision as settled law on the question of a controlled market in this case. We, accordingly, hold that since in the sales by the manufacturer of the involved paper tissue the goods were not freely offered to all purchasers, those sales prices cannot be accepted as evidence of foreign value.

The record before us, however, contains abundant evidence that the distributors to whom the manufacturer sold the involved tissue freely offered the same to all purchasers who cared to buy within the meaning of section 402 (c) of the Tariff Act of 1930, and it is the price thus paid and received which must be accepted as the proper foreign value of this merchandise.

The record establishes that New Westminster and Vancouver, B. C., were principal markets for the sale of the involved tissue. As to the question of the wholesale and usual wholesale quantity, the evidence before us is not entirely satisfactory. The trial court held that: "There is no dispute between the parties here as to principal markets or as to usual wholesale quantities, it appearing that the price in any event was not based upon the quantity purchased." The above statement by the trial court is factually correct insofar as it refers to sales by the distributors to the retailers for resale, and we so accept it.

If there were any doubt upon the above point, reference is made to *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, where the Court of Customs and Patent Appeals held that:

When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise. Section 501, Tariff Act of 1930.

In *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, the Court of Customs and Patent Appeals, referring to the *Freedman & Slater, Inc.*, case, *supra*, said:

* * * In that case we stated that while the appraisement as it comes before the trial court must be presumed to constitute in all of its items the true value of the merchandise, the one who challenged the correctness of such value may do so in respect of any of such items. * * * Because, however, the importer had challenged that item only and no other item of the appraisement, the presumption of correctness as to all those others is not destroyed, and, therefore, they stand as presumptively correct.

Therefore, if any questions as to usual wholesale quantities in the transactions between the distributors and retailers for resale should arise, we hold that the findings of the appraiser as to this item, being presumptively correct, must stand, since the importers have failed to prove otherwise.

Since we find that the proper basis of foreign value for this merchandise are the prices charged by the distributors to the retailers for resale, and since these prices are higher than those involved in transactions between the manufacturer and the wholesale paper dealers and wholesale grocers, we find that the prices for home consumption between the distributors and retailers for resale are higher than the prices for export between either the manufacturer and the wholesale paper dealers and wholesale grocers or the distributors and retailers for resale.

There is sufficient evidence in the record to establish that the freely offered prices charged by the distributors, which prices coincide with the appraised values, were the prices at which all purchasers from the distributors, irrespective of any bargaining ability, might buy.

Counsel for the importers, in its brief filed herein, suggests that:

Foreign value, as defined in section 402 (c), could exist here by virtue of one of the following classes of sales:

\*       \*       \*       \*       \*       \*       \*

2) Sales by Westminster's British Columbia distributors to retail stores. The appraised values of Can. $6.11 for "Westminster" and $8.33⅓ for "Purex" were intended to represent such sales.

The above contention is predicated upon the assumption that the appraised values were based upon Westminster's suggested resale

prices. The record is void of any evidence to establish this assumption as a fact. In other words, there is no evidence in this record to establish that the appraised values were based upon Westminster's suggested resale prices.

It is further contended by counsel for the importers that since it is shown that the involved merchandise was not sold by the distributors to the retailers for resale at definite or uniform prices, this condition negatives the existence of dutiable foreign value. This contention is fully answered by the Court of Customs and Patent Appeals in the case of *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129, in the following language:

It is true that it appears from the record that the *major portion of sales* of merchandise like that here involved, both for consumption in Mexico and for export to the United States, were at the manufacturer's list prices, less discounts varying from 5 per centum to 15 per centum on goods for consumption in Mexico and from 5 per centum to 21 per centum on goods sold for export to the United States. However, it clearly appears from the record that merchandise like that here involved was not freely offered for sale *to all purchases* in the usual wholesale quantities and in the ordinary course of trade, either for consumption in Mexico or for export to the United States, at prices less than the manufacturer's list prices.

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46819; *Stone & Downer Co.* v. *United States*, 21 C. C. P. A. (Customs) 479, T. D. 46958; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308.

In the latter case, referring to the definition of "foreign value" in section 402 (c), *supra*, we said:

The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets.

As there is no evidence of record that merchandise like that here involved was sold or freely offered for sale to *all purchasers* in the usual wholesale quantities and in the ordinary course of trade in the principal market of Mexico, either for consumption in Mexico or for export to the United States, at prices less than the manufacturer's list prices, it should have been held that the proper dutiable values of the involved merchandise are the manufacturer's list prices, plus packing. Accordingly, we must hold that the findings of the trial court and the appellate division of the Customs Court that the dutiable values of the involved merchandise are the manufacturer's list prices, less a discount of 10 per centum, plus packing, are not supported by any substantial evidence.

The judgment of the appellate division of the United States Customs Court is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

In the case of *United States* v. *Faber, supra,* the Court of Customs and Patent Appeals made the following observation:

In its decision the lower court said:

> We believe that the issue in these cases is controlled by the decision in *United States* v. *Hammel, Riglander & Co.,* 16 Ct. Cust. Appls. 37, T. D. 42716, involving the dutiable value of watch crystals imported from France, wherein it was shown that all wholesale purchasers who satisfied the manufacturer that they would purchase a minimum of 200,000 francs worth of crystals per year were granted a discount of 15 per centum from the list prices. The appellate court held that the duitable value of the merchandise therein was the list price less 15 per centum discount, after commenting on the fact that the discount was granted on the same conditions to all purchasers, and deducted on each invoice, and stating:
>
> > It can not be said, therefore, that the market in France, whether for home consumption or for exportation, was not a free, open market to all comers who were financially responsible and who agreed to do an annual business which would warrant the allowance of a discount of 15 per centum.
>
> We are frank to say that in the case at bar the lower court was justified in considering our decision in the case last above cited as controlling their decision herein, and we should affirm said decision if we now approve the holding of this court in *United States* v. *Hammel, Riglander & Co.,* 16 Ct. Cust. Appls. 37, T. D. 42716.

>     *     *     *     *     *     *     *

> It appears from the foregoing that the watch crystals there involved were not freely offered for sale to all purchasers in the usual wholesale quantities, and in the ordinary course of trade, at a discount of 15 per centum from the list price, but that such offers and sales were limited to those who would agree to make purchases aggregating a minimum amount during a year.

> We have carefully considered the opinion in said case, and are now convinced that the court was in error in holding that a discount allowed under the facts there found could be considered in arriving at either foreign or export value.

In the case of *M. V. Jenkins et al.* v. *United States,* 34 C. C. P. A. (Customs) 33, C. A. D. 341, the Court of Customs and Patent Appeals made the following observation with reference to the *Mexican Products Co.* case, *supra*:

> With regard to such variances, the trial court stated that, although the prices in wholesale quantities of merchandise like that here involved differed, there was authority for holding that "where goods are sold at different prices in wholesale quantities, the highest price is the price at which the goods shall be considered as freely offered for sale to all purchasers." In support of that statement, the court cited the case of *United States* v. *Mexican Products Co.,* 28 C. C. P. A. (Customs) 80, C. A. D. 129. That case is not authority for holding that where prices differ, the highest price shall be the price at which the merchandise is freely offered for sale within the purview of section 402 (c), *supra.*

> In the *Mexican Products Co.* case, *supra,* it appeared that the merchandise there in question was freely offered for sale to all purchasers at certain list prices and that all other prices at which it was sold either for home consumption in Mexico or for export to the United States depended upon the bargaining ability of the purchasers, some of whom received discounts from the list prices of goods for consumption in Mexico ranging from 5 per centum to 15 per centum and others received discounts from the list prices of goods to be exported to the

United States ranging from 5 per centum to 21 per centum. There being no uniform prices, other than the list prices, at which the merchandise was freely offered for sale, this court held that the dutiable values of the merchandise there involved were the list prices. We, of course, had no intention of holding that where the prices differed, the highest price should be considered the price at which the merchandise was freely offered for sale in the usual wholesale quantities.

\*        \*        .  \*        \*        \*        \*        \*

Neither the trial court nor the appellate division of the Customs Court actually found the usual wholesale quantities in which each of the various articles here involved was freely offered for sale to all purchasers in the principal markets of Canada for home consumption. Accordingly, this court, which is limited to the consideration of questions of law only, is unable to determine whether there is any substantial evidence of record to support the judgment of the appellate division of the Customs Court.

\*        \*        \*        \*        \*        \*        \*

Owing to the fact that there has been no finding of the usual wholesale quantities and the prices at which the various articles here involved were freely offered for sale in usual quantities for consumption in Canada, we find it necessary to reverse the judgment of the appellate division of the Customs Court and remand the case to it with instructions that it in turn remand the case to the trial court for findings in accordance with law.

In view of the fact that the trial court and the appellate division of the Customs Court had failed to make any finding of a usual wholesale quantity, it is apparent that there was no quantity to which any prices, uniform or otherwise, could be applied for the purpose of determining the value of the merchandise involved in the *Jenkins* case, *supra*. This being true, it is equally apparent that any discussion or holding in the *Jenkins* case, *supra*, as to the effect of varying prices and of the decision in the *Mexican Products Co.* case, *supra*, was unnecessary to a decision in the *Jenkins* case, *supra*.

It is a matter of common knowledge of which this court may take judicial notice that merchandise is offered for sale and sold at various prices in the same market and on the same day, and that such prices are not uniform and definite. In such a situation, such merchandise unquestionably has a value within the framework of section 402 of the Tariff Act of 1930, other than cost of production. To hold otherwise, would, in many instances, prevent the finding of a value for such merchandise, other than that of the cost of production. In this connection, it is observed that section 402 of the Tariff Act of 1930 makes no mention of definite and uniform prices at which merchandise is offered for sale. Neither does said section contain any provision to the effect that where prices differ, the highest price should be considered the price at which the merchandise was freely offered for sale in the usual wholesale quantities and in the ordinary course of trade in the principal markets. On the other hand, said section does provide for the value or the price at which such or similar merchandise is freely offered for sale *to all purchasers* in the principal markets of

the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

It is our view that the decision of the Court of Customs and Patent Appeals in the *Mexican Products Co.* case, *supra*, is in complete harmony with the provisions of said section 402, and that the decision in the *Jenkins* case, *supra*, is not in conflict with either the provisions of said section 402 or with the decision in the case of *Mexican Products Co.*, *supra*. We agree with the observation of the Court of Customs and Patent Appeals in the *Jenkins* case, *supra*, that there was no holding in the *Mexican Products Co.* case *supra*, "that where the prices differed, the highest price should be considered the price at which the merchandise was freely offered for sale in the usual wholesale quantities." This fact is made clear by the following quotation from the *Mexican Products Co.* case, *supra*:

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade.

In view of what has been said, we find no merit in the contention of counsel for the importers that since "Purex" and "Westminster" brands of toilet tissue were sold at a variety of prices, such sales did not create a foreign value. That is exactly the situation which prevailed in the *Mexican Products Co.* case, *supra*, where prices for the merchandise for consumption in Mexico varied from net to net, less 15 per centum, and where the prices for the merchandise for exportation to the United States varied from net to net, less 21 per centum. Based upon this state of facts, the Court of Customs and Patent Appeals in the *Mexican Products Co.* case, *supra*, held that the price which should be accepted was the price at which the merchandise was offered *to all purchasers* in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. The appellate court did not hold that "The condition negatives the existence of dutiable foreign value," but accepted instead the price at which the merchandise was freely offered for sale *to all purchasers*.

We are in accord with the holding of the Supreme Court in *United States* v. *Passavant*, 169 U. S. 16, wherein it was stated that "* * * the act does not contemplate two prices or two market values." We are following in this case the principle thus announced, and are finding *one* price or value for the involved merchandise at which all purchasers could buy, or *one* price or value at which the merchandise was freely offered *to all purchasers*, in accordance with the statute as construed by the Court of Customs and Patent Appeals, and other courts, even

even though the merchandise was freely offered for sale, and sold at various prices.

Considering this record as a whole, we find that the evidence is not sufficient to overcome the presumption of correctness attaching to the values found by the appraiser, or to establish any other values for this merchandise. Title 28 U. S. C., section 2633, provides in part:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

Therefore, the values found by the appraiser must be held to be the proper foreign values for this merchandise.

Based upon the record before us, we find as facts:

1. That the merchandise involved herein consists of toilet tissue, "Purex" and "Westminster" brands, manufactured by the Westminster Paper Co., Ltd., of New Westminster, B. C.

2. That on or about the dates of exportation of the involved merchandise, the manufacturer thereof did not freely offer its products to all purchasers for home consumption and for exportation to the United States within the meaning of section 402 of the Tariff Act of 1930.

3. That the manufacturer's mill at New Westminster, B. C., which is located near Vancouver, B. C., and Vancouver, B. C., were principal markets in Canada for the sale of merchandise such as that here involved.

4. That the prices at or about the dates of exportation of the involved merchandise at which such merchandise was freely offered for sale to all purchasers by so-called distributors for home consumption in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade, including all charges and expenses specified in section 402 of the Tariff Act of 1930, were, for "Westminster" brand $6.11 per case, Canadian currency, net, packed, and for "Purex" brand $8.33⅓ per case, Canadian currency, net, packed, as appraised.

5. That the prices at or about the dates of exportation of the involved merchandise to the United States at which such toilet tissue was offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including all costs, charges, and expenses specified in section 402 (d) of the Tariff Act of 1930, were not higher than the foreign values.

We conclude as a matter of law:

1. That foreign value, as specified in the statute, *supra*, is the proper basis of value for the involved merchandise.

2. That this record fails to establish that the appraised values were based upon Westminster's suggested resale prices.

3. That the price at which the manufacturer offered the involved toilet tissue for sale, either for home consumption or for exportation to the United States, being restricted, is not acceptable as evidence of either foreign or export value.

4. That the foreign value for the respective brands of the involved toilet tissue is as set out in finding of fact No. 4, above.

The judgment of the trial court is accordingly modified. Judgment will be rendered accordingly.

### CONCURRING OPINION

Rao, Judge: I am in agreement with my associate insofar as he has found that sales in Canada on the manufacturer's level were restricted; that such market was a controlled one; and that foreign value may not be predicated upon such sales. In my opinion, the cases cited in that portion of the decision devoted to this point show that the trial court erred in finding to the contrary.

It seems to me, however, that the question arising out of sales by the distributors to the retailers was not whether a foreign value exists where merchandise is sold at a variety of prices, but rather whether the record establishes that there is *a* price at which such merchandise is freely offered for sale to all purchasers, in the usual wholesale quantities and in the ordinary course of trade. This is the principle to be derived from the cases of *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129, and *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, cited by my colleague in his opinion. For if there were a variety of prices, all within the requirements of the foreign value provision of section 402 of the Tariff Act of 1930, no one of them may properly be selected as *the* foreign value of the merchandise. *United States* v. *M. V. Jenkins et al.*, 26 Cust. Ct. 467, Reap. Dec. 7924, affirmed 39 C. C. P. A. (Customs) 158, C. A. D. 479.

As I weigh the evidence in this case, I find that it does establish, for each brand of toilet tissue here involved, *a* price at which it was freely offered for sale to all purchasers for home consumption, in the usual wholesale quantities and in the ordinary course of trade, and that such price, for each brand, coincides with the appraised value. Therefore, there is no necessity for any consideration of whether a statutory foreign value may be predicated upon one of several freely offered prices.

With the observations set out above, I concur in the findings and conclusions of my associate.