(Reap. Dec. 9087)

D. E. SANFORD COMPANY v. UNITED STATES

Entry No. 7933, etc.

(Decided February 27, 1958)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Daniel I. Auster* and *Mollie Strum,* trial attorneys), for the defendant.

WILSON, Judge: This appeal for reappraisement relates to certain household utensils, exported from Belgium and entered at the port of San Francisco.

The appraised values were equivalent to list prices, less 20 per centum (i. e., at the column-11 prices, as shown by the consular invoices, plus 33⅓ per centum, plus export packing). Plaintiff claims the proper value of the merchandise is represented by the list prices, less 40 per centum discount. Counsel for the respective parties agreed that there was no export value for such or similar merchandise applicable to the involved goods (R. 3).

The record herein consists of an affidavit of O. Rary, managing director of the exporter, sworn to on June 25, 1953 (plaintiff's exhibit 1), and a report of the American vice consul, Brussels, Belgium, dated February 10, 1953, which was transmitted with "OPERATIONS MEMORANDUM" covering an investigation of household utensils manufactured and shipped by Fonderie Emaillierie of Brussels, Belgium, the manufacturer of the goods here under consideration (defendant's exhibit A).

Plaintiff's exhibit 1 recites that the affiant is personally familiar with the facts therein stated as to the sale by the manufacturer of cast-iron ware during the period 1951 "to date" (June 25, 1953); that approximately 25 per centum in 1951 and 55 per centum in 1952 of the total production by the manufacturer were sold to two purchasers in the United States, namely, to the plaintiff herein and

to Markt & Hammacher Co. of New York; that the balance of production, from 1951 to June 25, 1953, was sold to buyers in Belgium, except for certain sales (30 per centum in 1951 and 13 per centum in 1952) to countries other than the United States.

With respect to the sales price in the country of manufacture, the affiant stated that the articles sold in Belgium were of the same class and kind as were exported to the United States and that such sales were made with a discount of 40 per centum from the list prices, plus 9 per centum transmission tax, plus packing, the cost of packing being returnable for full credit.

With respect to the class of buyers in Belgium, Mr. Rary "estimated" that there were approximately 2,000 retail stores purchasing merchandise of the character here involved from wholesalers, further estimating the usual annual purchase of such merchandise by the retail stores to be approximately 15,000 francs per year, or about 500 kilos by weight. The affiant stated that, in practically all instances, the retail stores sold the merchandise at "list" prices. He further stated that the wholesalers' ordinary resale transactions were in quantities of from 30 to 60 kilos, valued at approximately 1,200 to 2,400 francs; that sales by the wholesalers to the retail stores were not sales "in the usual wholesale quantity," alleging the latter quantity to be approximately 500 kilos for each sale.

While Mr. Rary in his affidavit stated that, "as a rule," the retail stores made purchases from wholesalers, who had bought the involved products from the manufacturer at list prices, less 40 per centum, he explained that, with the exception of department stores, most of the class of retailers carrying on substantial trade in cast-iron ware are members of one of four associations or co-operatives located in Belgium; that these associations buy from the exporter on behalf of their members at list prices, less 40 per centum, and then deliver the goods to the member stores at that price; that, although such purchase is billed by the exporter to the association, it is actually a sale to the retailer at list prices, less 40 per centum, without regard to the quantity. Mr. Rary further alleged that, in addition to the purchases made by retailers or members of the associations or co-operatives at list prices, less 40 per centum, the manufacturer regularly sold merchandise, such as that here involved, at the same prices to retailers who purchased "in the usual wholesale quantity" of 500 kilos and that transactions of this character "included sales to department stores and to other stores of sufficient size to make such purchases"; that the manufacturer also sold to several electric public utility firms which resold the cast-iron ware to its customers in promotion of the use of electric ranges, such merchandise differing slightly from that imported; that, in addition, the manufacturer made sales to certain retailers at list prices, less 40 per centum, even though their single purchase did not equal 500 kilos, and that such

sales were to firms with whom the manufacturer had done business on this basis since production started.

Affiant, in his affidavit, further stated that the wholesalers resold the products to retailers, at list prices, less 20 per centum; that, while there may have been exceptions as to quantity, sales by wholesalers to retailers were rarely in quantities of 500 kilos.

With respect to the principal market, Mr. Rary stated that, upon the basis of the quantity sold, "it is said that" Brussels is the principal or chief market in Belgium for the involved goods; that all sales made by the manufacturer herein are made by its Brussels office, and that these sales were principally to the department stores, to one of the co-operative associations called "Groothins," which had approximately 100 retail stores as members, and to many Brussels wholesalers.

Defendant's exhibit A contains a tabulation supplied by the manufacturer for the period August–October 1952 as proof showing sales to large wholesalers and others, showing percentagewise the number of sales to each class purchasing for home consumption at list prices, less 40 per centum discount, based on the factory's base prices established August 1950. Such sales are indicated therein as follows:

1. The large wholesalers who bought — 52.35% of all sales
2. The smaller wholesalers buying in quantities of at least 500 Kgr. — 10.91% of all sales
3. Department stores — 24.37% of all sales
4. Cooperative stores — 5.75% of all sales
5. Electric works which promote the sale of articles with ground-base bottoms for use on electric ranges — 5.67% of all sales

99.05%

Defendant's exhibit A states that the smaller retailers who are permitted to buy in less than 500 kilos, representing only 0.95 per centum of the manufacturer's total sales, were granted discounts of 35 per centum or less in the same period August–October 1952, dependent on the size of their purchases, and that such purchasers were regarded "as a privileged group." Said report further states that the wholesalers sell to retailers at base prices, less 20 per centum discount, plus invoice tax; that the wholesalers have no special territory allotted to them and that all are free to sell in any part of Belgium; that there is no syndicate or combine of wholesalers controlling prices for the retail trade. It further appears from said report, based on information given by the manufacturer, that keen competition exists between the various wholesalers who have agents everywhere in Belgium and who rely on good salesmanship, easy credit terms, etc., to win customers in the retail trade. The report also discloses that the factory, itself, has two agents in Belgium, each of whom receives a 5 per centum commission for all sales in his district, whether direct or indirect purchases.

Respecting the price applicable to the involved goods, defendant's exhibit A states that the manufacturer stated that, based on the weight, the price per kilo to the United States is 31 francs f. o. b. Antwerp, including overseas packing, which is lost, and for home consumption is 27.50 to 28 francs per kilo, franco domicile, including packing, provided the purchaser returns the cases and packing material to the factory within 8 days.

The issue in this case is whether the list prices, less 20 per centum discount, plus packing, or list prices, less 40 per centum discount, represent the foreign value of the merchandise.

In determining foreign (and export) values, as defined in section 402 (c) (and section 402 (d)), it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale to *all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade. [Italics by the court.] *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, 89, C. A. D. 129. Further, the usual wholesale quantity cannot be determined by finding the greatest number of sales granted a particular discount, without proof that the most frequently given discount attached to sales in the usual wholesale quantity. *Lovell Dressel Co., Inc.* v. *United States*, 25 C. C. P. A. (Customs) 64, 67 (quoting with approval from the opinion of the lower court), T. D. 49064.

In *United States* v. *Blake-Moffitt & Towne, Inc.* (*Broder Brokerage Co.*), *et al.*, 30 Cust. Ct. 634, A. R. D. 23, respecting the proper value of certain brands of toilet tissue, the court, page 636, stated:

In view of the fact that sales and offers for sale of the involved merchandise to purchasers in the United States were restricted by the manufacturer to those who purchased in carload lots, the evidence establishes that the manufacturer of the involved paper did not freely offer its products for sale for export, within the meaning of section 402 of the Tariff Act of 1930. In offering and selling the involved merchandise for home consumption, the manufacturer offered and sold its products only to persons or firms known as "distributors," in which category were wholesale paper dealers and wholesale grocers.

These facts bring this case squarely within the principles announced by the Court of Customs and Patent Appeals in *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436, insofar as is here concerned the prices which the manufacturer charged to and received from the wholesale paper dealers and wholesale grocers. In the *Robinson* case, *supra*, it was held as follows:

We agree with the contentions of the Government that the sales price of the wholesalers to the tie manufacturers should be accepted as the foreign value. It may be, as is contended by the importer, that it is the "ordinary course of trade" between the manufacturer and the wholesaler to restrict the sales to wholesalers, but this is not the ordinary course of trade to which the statute refers. It must be remembered that the statute provides for "the ordinary course of trade" in which such or similar goods are "freely offered for sale to all purchasers" in the usual wholesale quantities. Since

in the sales by the manufacturers the goods were not offered to all purchasers, the sales price should not be accepted as the proper foreign value. * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In the case at bar, it appears that the manufacturer sold or offered for sale merchandise such as that in question, with one exception, only to certain classes of purchasers, who purchased in quantities of 500 kilos (approximately 15,000 francs in amount (plaintiff's exhibit 1)), such sales or offers being made by the manufacturer at list prices, less 40 per centum discount. Such sales at the indicated prices were made to four classes of purchasers, viz, (1) wholesalers, (2) certain associations or co-operatives, who purchase on behalf of their members and then deliver the goods to member stores, (3) other retailers, who purchase to the extent of 500 kilos each purchase, and (4) a preferred class of retailers, whose single purchase did not equal 500 kilos. It further appears, however, as indicated in plaintiff's exhibit 1, that there were about 2,000 retail stores purchasing this merchandise from wholesalers, who resold the goods in quantities, of from 30 to 60 kilos, at list prices, less 20 per centum discount, regardless of quantity.

The above-indicated sales policy, as maintained by the manufacturer herein, negatives, in my opinion, a finding of value predicated on the prices accorded to wholesalers and other special classes. Since, in the sales by the manufacturer, the goods were not offered or sold at the indicated prices to all purchasers, such sales prices, because of the restriction imposed by the manufacturer, should not be accepted as the proper foreign value.

Further, with respect to the purchases made by the associations or co-operatives, it appears that the individual retailers who are members of these associations do not purchase directly from the manufacturer at list prices, less 40 per centum discount, and the manufacturer does not ship directly to these retailers. Such purchases are only made through the associations or co-operatives, and the manufacturer never bills these retailers for such purchases. It thus appears that the manufacturer's sales policy discriminates against the small retailers who are not members of these associations, and the merchandise is not freely offered for sale to all purchasers at list prices, less 40 per centum discount. It may be further observed that the evidence in this case is confined solely to the course of business of the exporting concern, nothing having been offered as to the customs and practices of other companies engaged in similar trade.

Plaintiff, in this case, in support of the claimed values, relies upon the allegation made by the affiant in plaintiff's exhibit 1 that 500 kilos, a measure of weight, represents the usual wholesale quantity with respect to the involved merchandise. This contention, however, is untenable, and the affiant's allegation is but an unsupported conclusion of an ultimate fact and does not constitute substantial evidence as to

usual wholesale quantity. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, 45, C. A. D. 495. It appears well settled that the usual wholesale quantity cannot be determined on a basis such as weight or money value, the statute providing that the appraised valuation of imported merchandise must be based upon the unit of quantity in which the merchandise is usually bought and sold. *J. J. Gavin & Co., Inc., et al.* v. *United States*, 38 C. C. P. A. (Customs) 69, 72, C. A. D. 441. See also *Semon Bache & Co.* v. *United States*, 28 C. C. P. A. (Customs) 166, C. A. D. 140.

The record before me establishes that the wholesalers to whom the manufacturer sold the involved merchandise freely offered the same to all purchasers who cared to buy within the meaning of section 402 (c) of the Tariff Act of 1930, and it is the price thus paid and received which must be accepted as the proper foreign value of the merchandise. Inasmuch as all sales by all wholesalers are freely made to all purchasers at one price, regardless of quantity, to wit, list prices, less 20 per centum, it is not necessary to determine the usual wholesale quantity at the wholesaler's level. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, 96, T. D. 49093.

Considering the record as a whole, I find that the evidence is not sufficient to overcome the presumption of correctness attaching to the values found by the appraiser, or to establish any other values for this merchandise. Therefore, the values found by the appraiser must be held to be the proper foreign values for this merchandise.

Based upon the record before me, I find as facts:

1. That the merchandise involved consists of enameled iron household utensils, exported from Belgium between June 14, 1951, and May 18, 1953.

2. That the manufacturer herein limited its sales for export to the United States to only two firms.

3. That, during the involved period, the manufacturer offered and sold its merchandise only to special classes of customers for home consumption in the country of exportation and that it did not sell such or similar merchandise for home consumption to all purchasers who desired to purchase.

4. That wholesalers sold such or similar merchandise for home consumption in Belgium, without restriction to all purchasers who desired to purchase, at list prices, less 20 per centum discount, regardless of the quantity purchased.

I conclude as a matter of law:

1. That no export value existed for such or similar merchandise, as that value is defined in section 402 (d) of the Tariff Act of 1930.

2. That foreign value (section 402 (c), Tariff Act of 1930, as amended) is the proper basis for determining the value of the involved merchandise.

3. That there is no foreign value for such or similar merchandise based upon the prices at which the manufacturer sold the goods, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended.

4. That foreign value (section 402 (c), Tariff Act of 1930, as amended) is represented by the sales of the wholesalers at the manufacturer's list prices, less 20 per centum, plus exporting packing, as invoiced in each case.

Judgment will be entered accordingly.