(Reap. Dec. 9753)

### CHR. BJELLAND & CO., INC. v. UNITED STATES

Entry No. 715806, etc.

(Decided July 26, 1960)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of certain brisling sardines in olive oil and kipper snacks, exported from Norway during the period from April 26, 1958, to August 30, 1958.

The merchandise was appraised on the basis of export value under the provisions of section 402(b), Tariff Act of 1930, as amended by

the Customs Simplification Act of 1956, Public Law 927, dated August 2, 1956 (70 Stat. 943; 91 Treas. Dec. 295, T.D. 54165), for the reason that the articles at bar are not specified in the final list published by the Secretary of the Treasury pursuant to section 6(a) of said Public Law 927 (93 Treas. Dec. 14, T.D. 54521).

The plaintiff herein does not contest the basis adopted by the appraiser for the determination of the value of the merchandise, i.e., export value, but claims that the correct values are lower than those returned by the appraiser.

The export value provision of section 402, Tariff Act of 1930, as amended, reads as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Various portions of the language of the foregoing definition of export value have themselves been defined in section 402(f) of the amended act, as will be referred to hereinafter.

The cases have been submitted for decision upon stipulation of counsel, reading as follows:

1. That the record as heretofore made be physically stricken and expunged and the exhibits therein be returned to respective counsel who offered the same.

2. That the seven cases which have been marked ready for trial be consolidated for purposes of trial.

3. That the invoices and accompanying papers used upon entry in each case be considered in evidence without being specifically marked as exhibits.

4. That the affidavit of Chr. W. Bjelland, sworn to on July 27, 1959 at Stavanger, Norway, be received in evidence and marked Plaintiff's Exhibit 1, counsel for defendant reserving the right to brief its competency, relevancy, materiality, and weight.

5. That sales by the involved exporter Chr. Bjelland & Co. A.S., of Stavanger, Norway, for exportation to the United States during the involved period were sales at the same price and terms to its only United States purchasers, to wit, Chr. Bjelland & Co. Inc., New York, N.Y., and P. V. Bright & Company of Chicago, Illinois, in usual wholesale quantities or higher and in the ordinary course of trade for exportation to the United States, and that such or similar merchandise as defined in section 402(f)(4)(A) of the Customs Simplification Act of 1956 (T.D. 54165) was not sold or freely offered for sale during the involved period to any other United States purchasers.

[6.] * * * that if the Court finds that the export value as defined in section 402(b) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, effective February 27, 1958, is the proper basis for the appraisement of such or similar merchandise, as defined in said section 402(f)(4)(A),

then the appraised values represent the dutiable value of the merchandise in each case, as this class of merchandise is not on the final list of products promulgated in T.D. 54521, 93 Treasury Decisions, 314.

██ * * * that if the Court should find that there is no export value for merchandise "such or similar" to that at bar, as defined by said section 402(f)(4)(A), *supra*, then the export value of merchandise "such or similar" to that at bar, as defined in section 402(f)(4)(B) is as follows for the periods shown below:

For the period from February 27, 1958 to May 1, 1958

|  | Per case |
| --- | --- |
| Brisling Sardines in olive oil 50/4 (2 layer) | $9.50 |
| " " " 50/4 (cross pack) | 9.75 |

For the period beginning May 2, 1958 and ending June 8, 1959

|  | Per case |
| --- | --- |
| Brisling Sardines in olive oil 50/4 (2 layer) | $9.25 |
| " " " 50/4 (cross pack) | 9.50 |
| " " " 50/8 | 6.50 |
| Kipper Snacks 50/4 | 3.75 |

All of the above prices are f.o.b. Norway.

Plaintiff contends that the merchandise involved in the transactions between the exporter and its two United States purchasers, stipulated, in effect, to be "such or similar merchandise," as described in section 402(f)(4)(A), was not "freely sold * * * in the ordinary course of trade," within the meaning of the statute, and that, consequently, for the determination of export value, recourse should be had to the sales price of "such or similar merchandise," as defined in section 402(f)(4)(B).

It is apparent from the foregoing that the definitions of the terms contained in the export value statute, as amended, with which we are here primarily concerned, are those of the terms "such or similar merchandise," "freely sold or, in the absence of sales, offered for sale," and "ordinary course of trade." So far as pertinent to the discussion of the issues in the case at bar, these terms are defined as follows:

Section 402(f)(4):

The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

* * * * * * *

Section 402(f)(1):

The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

Section 402(f)(2):

The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

The evidence offered by the plaintiff to disprove the fact that the transactions between the exporter and the two United States purchasers were in the ordinary course of trade at prices which fairly reflected the value of the merchandise, takes the form of an affidavit of the president and chairman of the board of the exporter. In his affidavit, offered and received in evidence as plaintiff's exhibit 1, the affiant sets forth the conditions and practices under which the exporter did business with the two United States purchasers. These were:

(1) The two purchasers were not permitted to purchase sardines or kippered herring from any other packer than the exporter.

(2) They were required to defray some or all of the costs for advertising the exporter's products in the United States, the minimum amounts to be spent and the percentage of the costs to be borne by each purchaser to be determined solely by the exporter.

(3) They were required to pay for the goods at the time of shipment.

(4) They were required to maintain warehouse facilities at various places, so as to be able to make spot deliveries when required.

(5) They were required to guarantee their customers' floor stocks against price decreases, without reimbursement from the exporter.

(6) They were required to furnish product liability insurance.

(7) They were required to assume full responsibility for replacement or make allowances for "spoils" and "swells."

(8) The prices were determined solely by the exporter, were not subject to negotiation, and could be changed after the merchandise had been shipped.

(9) One of the purchasers was a wholly owned subsidiary as to the policies of which the exporter exercised absolute and complete

control. The other purchaser was required to advance at the beginning of the packing season as much capital as the exporter estimated it would require.

The affiant stated that he had been associated with the exporter for 26 years, during all of which time he had been directly concerned with the canning and selling of sardines and other products of his company and had kept himself thoroughly familiar with the prices, terms of sale, character, and quality of the sardines and other products of his company and with the prices, quality, and circumstances of sale of products of other Norwegian canners in competition with the products of his company. In addition, he stated that he was president of the Canners' Export Committee, vice president of the Norwegian Export Council, and a member of and former president of the Norwegian Canners' Association. Based upon this experience, and affiant stated—

\* \* \* I know that no other packer or exporter in Norway follows the same policies that my company follows. Other Norwegian packers or exporters of fish and fish products identical or similar in physical characteristics with those produced by my company who sell for exportation to the United States are: Atlantic Canning Co. A/S, Central Canning Co. A/S, A/S Herkules Canning Co., Mercantile Canning Co. A/S, Mogens Canning Co. A/S, Norrig Hermetikkfabrikker A/S, North Sea Packing Co. Ltd., A/S Standard Ltd., Stavanger Canning Co. A/S, Stavanger-Fjord Packing Ltd., Stavanger Packing Co. A/S, Stavanger Preserving Co. A/S, Bergen Preserving Co. A/S, A/S Bergenhus Canning Co., Norwegian Preserving Co. A/S, A/S Trondhjem Canning & Export Co. All of the foregoing packers and exporters freely offer and sell their products to any one who wishes to purchase them for exportation to the United States without restrictions of any sort and their prices do not vary by reason of the quantities purchased. The prices at which they offer and sell Norwegian canned fish and fish products, identical in physical characteristics with the fish and the fish products produced by my company, for exportation to the United States fairly reflect the true market value as a result of arms' length transactions between unrelated persons in the open market. These prices are indicated for the various competing types and sizes of sardines and kippered herring, as noted on the attached schedules together with the prices charged by my company for merchandise having identical or similar physical characteristics.

Plaintiff contends that the record establishes that the conditions and practices obtaining in the case of the sales by the exporter to the two United States purchasers were so "extraordinary and abnormal" as to bar a finding that the sales were made in the ordinary course of trade at prices which fairly reflected the market value of the merchandise.

It further contends that the evidence contained in the affidavit, exhibit 1, with respect to the conditions and practices obtaining in the trade in Norway for the sale for exportation to the United States of canned fish products by all other exporters thereof, represented the "ordinary course of trade," within the meaning of the statute, and

that such ordinary course of trade was to sell to all prospective purchasers without restrictions or conditions of any kind.

On behalf of the defendant, its counsel contends that the conditions and practices obtaining in the transactions between the exporter and the two United States purchasers represented the "ordinary course of trade" for two reasons:

(1) Inasmuch as it is stipulated that the sales by the exporter to the two United States purchasers were in the ordinary course of trade in the sale of such or similar merchandise, *as defined in section 402(f)(4)(A)*, it is immaterial whether any other conditions and practices were normal in the sale of such or similar merchandise, *as defined in section 402(f)(4)(B)*, and (2) moreover, the conditions and practices obtaining in the sales between the exporter and the two United States purchasers were not "extraordinary" or "abnormal."

It is further contended that the evidence offered by the plaintiff, consisting of the statement of the affiant in exhibit 1 with respect to the conditions and practices under which other packers in Norway sold canned fish products, does not constitute substantial evidence of the facts, inasmuch as such statement contains hearsay statements and conclusions of the affiant and were not made by the persons or firms named by the affiant. Moreover, it is contended that there is no competent evidence as to the similarity of the merchandise sold by the other packers to the merchandise here involved.

I have set forth the statute, record, and the contentions of the parties at some length in this opinion for the reason that the present case constitutes one of the first to arise in this court in which the valuation provisions of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, are involved.

On the record and briefs before me, I am of the opinion that there is no question but that the sales by the exporter of the merchandise at bar to the two United States purchasers described in paragraph 5 of the stipulation were—

(1) actual sales, as distinguished from any other form of transaction;

(2) sales to "selected purchasers," within the meaning of that term, as used in section 402(f)(1)(B);

(3) at wholesale; and

(4) made without restrictions *as to the disposition or use of the merchandise* by the purchaser.

I find no evidence in the record, and plaintiff has seemingly made no argument, that there are any contrary facts.

Consequently, and inasmuch as those sales were of such or similar merchandise in the first category defined in section 402(f)(4), the prices at which they were made would control the valuation of the

goods at bar, if they were made in the "ordinary course of trade" at prices "which fairly reflect the market value of the merchandise."

The term "ordinary course of trade" is used once in the export value statute itself, section 402(b), *supra*, and again in the definition of the term "freely sold or, in the absence of sales, offered for sale" in section 402(f)(1). As has been said, it is defined in section 402(f)(2), and, presumably, means the same thing wherever used in the amended act.

The first matter to be determined is the issue raised by the defendant as to whether the "trade" intended to be covered by that term is, under the circumstances of this case, limited to the trade between the exporter and its two selected purchasers. For convenience in reference, counsel for the defendant has, in the brief filed in its behalf, denominated the merchandise sold by the exporter to the two selected purchasers as "such" merchandise, using that term as the equivalent of the statutory description of "such or similar merchandise," as defined in section 402(f)(4)(A), and has denominated as "similar" merchandise that which would be covered by the statutory description of "such or similar merchandise," as defined in section 402(f)(4)(B). For the purposes of this opinion, I will adopt those denominations.

The argument of the defendant proceeds along the lines that there is no need to consider the ordinary course of trade with respect to "similar" merchandise, if the ordinary course of trade with respect to "such" merchandise has been established. Paragraph 5 of the stipulation would seem to establish that the sales between the exporter and the two selected purchasers were in the ordinary course of trade with respect to "such" merchandise.

Without defining the scope of the term "trade" precisely, in my view, the term was not intended to be interpreted in the limited fashion suggested by counsel for the defendant, but is wider and more general in application. I base this view principally on the fact that, according to the statutory definition of the term "ordinary course of trade" contained in section 402(f)(2), that term refers to the normal conditions and practices "in the trade under consideration *with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.*" If the italicized portion of the definition were interpreted along the lines of the defendant's contention, it would, in effect, read "with respect to merchandise the same as the merchandise undergoing appraisement," and there would have been no purpose in the use of the term "class or kind." Although the situations are not analogous, compare the foregoing interpretation with that in the case of *Star-Kist Foods, Inc.* v. *United States (Bruno Scheidt, Inc., Party in Interest)*, 45 C.C.P.A. (Customs) 16, C.A.D. 666, wherein the term "class or kind" was held to be one broadening the scope of the statutory language in connection with which it was used.

I am satisfied, therefore, that, in its application to the facts in the case at bar, the term "ordinary course of trade" refers to the trade in the sale of Norwegian canned fish products for exportation to the United States generally, and is not limited to the trade in the canned fish products of the seller of the merchandise at bar.

The next question to be determined is whether such or similar merchandise, as defined in section 402(f) (4) (A), was sold in the ordinary course of trade within the scope of the term as I have just indicated. The evidence given by the affiant in plaintiff's exhibit 1 established the conditions and practices under which such merchandise was sold. Plaintiff contends that such practices were extraordinary and abnormal; defendant contends that they were normal.

It would seem that, ordinarily, one could determine what was "extraordinary" and "abnormal," or not normal, only by comparison with what was established to be normal. Plaintiff contends that by the evidence of the affiant in plaintiff's exhibit 1, it has established that the conditions and practices obtaining in the sales in Norway by sellers other than the exporter at bar of "such or similar merchandise," as defined in section 402(f) (4) (B), that is to say, what has hereinbefore been denominated "similar" merchandise, were the normal conditions and practices in the trade in the sale of Norwegian canned fish products generally and, hence, represented the ordinary course of trade within the meaning of the statute.

Defendant contends that such evidence is insufficient to establish the facts as to the said ordinary course of trade.

I am of the opinion that defendant's contention must be sustained. While the background and experience of the affiant in plaintiff's exhibit 1 would appear to make him a man well qualified to give evidence with respect to the conditions and practices obtaining in the sale of Norwegian canned fish products, his statements with respect thereto are of little or no evidentiary value or are subject to the criticism or objection made by the defendant that they consist of conclusions and not evidentiary facts.

The affiant names 16 packers or exporters of fish and fish products identical or similar in physical characteristics with those produced by his company. After detailing the conditions and practices under which the exporter did business with the two United States selected purchasers, affiant states:

By reason of my experience as heretofore stated, I know that no other packer or exporter in Norway follows the same policies that my company follows.

While this statement indicates that the conditions and practices followed by other packers or exporters of fish and fish products were different from that followed by the exporter, it does not establish what the difference was. A following sentence—

* * * All of the foregoing packers and exporters freely offer and sell their products to any one who wishes to purchase them for exportation to the United States without restrictions of any sort and their prices do not vary by reason of the quantities purchased * * *

does not establish or tend to establish any fact probative of plaintiff's claim. The fact that the other packers and exporters sell to anyone is, presumably, in contrast to the action of the exporter of the merchandise in the case at bar who restricted its sales to two selected purchasers. The valuation statute, however, specifically provides in section 402(f)(1)(B) that sales to selected purchasers may be considered in determining value. The fact that such sales by other packers are made "without restrictions of any sort" does not appear to be probative of any fact at issue, inasmuch as the only restrictions with which the statute appears to be concerned are those as to the disposition or use of the merchandise by the purchaser. There is no evidence showing or tending to show that, even if the conditions and practices under which the exporter did business with the two selected purchasers, as shown by the affidavit, exhibit 1, were considered to be restrictions, any of them were concerned with the disposition or use of the merchandise by the purchaser.

The statement that the prices of the other packers and exporters did not vary by reason of the quantities purchased appears to have no relevancy to the issues in this case, inasmuch as it does not appear that variance of prices by reason of quantities purchased was a factor in the values returned by the appraiser, based upon the prices at which the exporter sold its merchandise to the two selected purchasers.

The further statement that—

* * * The prices at which they offer and sell Norwegian canned fish and fish products, identical in physical characteristics with the fish and the fish products produced by my company, for exportation to the United States fairly reflect the true market value as a result of arms' length transactions between unrelated persons in the open market * * *

would appear to be a conclusion of the witness, unsupported by evidentiary facts. Moreover, the export value statute does not by its terms require that the transactions upon which such value is to be based must be "arms' length transactions," and the term itself is one of uncertain meaning. Compare the definitions thereof as found in Webster's New International Dictionary, second edition, 1945, and Funk & Wagnalls New Standard Dictionary, 1942. It would appear that the witness used the term as referring to transactions in which neither party had an advantage over the other, but the Funk & Wagnalls' definition cited indicates that the term might mean "At a disadvantage."

Although the valuation statute, as amended, states that transactions between certain related persons may be disregarded in the determination of value (section 402 (g)), that provision seems to have appli-

cation only in connection with the determination of United States value and constructed value, and is not specifically related to the determination of export value, which is the basis of value with which this case is concerned.

I am, therefore, satisfied that plaintiff has failed to establish the normal conditions and practices in the trade in question upon the basis of which the ordinary course of trade called for by the statute could be determined.

It follows that plaintiff has failed to establish that the sales by the exporter to the two selected purchasers were not in the ordinary course of trade within the meaning of the statute and has, therefore, failed to overcome the presumption of correctness which attends the value returned by the appraiser (28 U.S.C. § 2633).

On the record before me, I find as facts:

(1) That the merchandise involved in the appeals for reappraisement enumerated in the attached schedule consists of "King Oscar" brand brisling sardines in olive oil and "King Oscar" brand kipper snacks, packed in cans, and exported from Norway by the packer thereof during the period from April 26, 1958, to August 30, 1958, both dates inclusive.

(2) That the merchandise was appraised on the basis of export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, of such or similar merchandise, as defined in section 402(f)(4)(A) of said act, as amended.

(3) That the plaintiff herein has failed to establish the incorrectness of the values returned by the appraiser.

I conclude as matters of law:

(1) That export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the involved merchandise, and that, by operation of 28 U.S.C. section 2633, such value is as found by the appraiser.

Judgment will issue accordingly.