(Reap. Dec. 10265)

INTER-MARITIME FWDG. CO., INC. *v.* UNITED STATES

Entry No. 486807.

(Decided May 23, 1962)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *William H. Orrick, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

WILSON, Judge: The importation at bar consists of certain wool sweaters, exported from England on or about January 16, 1959, and entered at the port of New York. The plaintiff herein is the customhouse broker for the importer of the merchandise.

The merchandise was appraised on the basis of export value under the provisions of section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. It appears that appraisement was predicated upon prices at which sales of merchandise such as is here involved were made by the manufacturer to certain so-called retailers who purchase for resale, which prices were higher than those given the importer herein.

The plaintiff claims that the correct export values for the involved merchandise are represented by the invoice values herein, on the theory that the purchaser in question is a "selected purchaser at wholesale," within the meaning of section 402(f)(1)(B) of the tariff act, as amended, *supra*, and that, accordingly, its purchase prices should be taken as the correct dutiable values.

The pertinent provisions of the tariff paragraphs under consideration are as follows:

Section 402(b) of the Tariff Act of 1930, as amended, *supra*:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f)(1) of the tariff act, as amended, *supra*:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise.

Section 402(f)(2) of the tariff act, as amended, *supra*:

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

Counsel for the respective parties stipulated herein as follows:

1. It is hereby stipulated and agreed by and between counsel for the Plaintiff and the Assistant Attorney General for the United States, Defendant, subject to the approval of the court, that the merchandise under appeal consists of certain wool sweaters, other than cashmere sweaters, exported from England by W. F. Paine, Ltd. (Alan Paine of Godalming), on January 15, 1959, to Frank L. Savage, Inc., New York, N.Y., and that said sweaters were invoiced, entered, and appraised at the following per piece prices in shillings, British currency:

| Quantity | Item | Unit invoice price | Entered price (net packed) | Appraised price (net packed) |
|---|---|---|---|---|
| 6 | #31/6 White Cable Cardigans | 45/0 | As invoiced less 3% | 53/0 less 3% |
| 12 | #4525 White Cable Sweaters | 39/0 | As invoiced less 3% | 46/0 ″ ″ |
| 18 | Richard Shetland Pullovers V neck | 31/6 | As invoiced less 3% | 37/0 ″ ″ |
| 5 | Garth Pure Heavy-weight Sw. V neck | 153/0 | (Appeal is abandoned as to this Garth Item. It is a cashmere sweater) | |

Plaintiff called one witness and there were introduced into evidence certain exhibits, including an affidavit (plaintiff's exhibit 1) of F. Alan Paine, managing director of the manufacturer, W. F. Paine, Ltd., England, together with certain samples illustrating the merchandise under consideration (plaintiff's exhibits 2, 3, and 4), as well as certain so-called "bulk production orders" and wholesale orders placed by the importer for one of the types of merchandise here involved (plaintiff's collective exhibit 6 and plaintiff's illustrative exhibits 7 and 8).

Mr. Frank L. Savage, president of Frank L. Savage, Inc., the importer of the involved merchandise, testified that his firm had been the exclusive United States wholesale seller of the products of the manufacturer and shipper in this case since 1947 (R. 7); that his firm received a commission on any sales made by the manufacturer to other United States buyers, which, the witness stated, were buyers of retail stores who go abroad and are able to buy from the manufacturer for direct delivery to their shop or store; that if such buyers want something in a hurry, they would place the order through the wholesale office of the importer at bar (R. 9). Mr. Savage further stated that he placed three types of orders with the manufacturer, namely, so-called "bulk" orders (plaintiff's exhibit 5) to give a factory enough work to overcome a lull in production; secondly, so-called "special label" orders in cases where customers do not wish to do their own importing, but put their orders through the importer herein, which company sends such special label orders to the manufacturer who adds the customer's labels to the merchandise; and, thirdly, so-called "wholesale" orders (plaintiff's illustrative exhibit 7, R. 15). Plaintiff's witness further stated that he purchased from the manufacturer at list prices, less 10 per centum selling commission, less 5 per centum discount for wholesale quantities, and less 3 per centum for payment within 30 days (R. 23). Mr. Savage stated also that his ability to buy and resell for his own account was not in reality a servicing feature of his selling agency with the manufacturer, but that such servicing feature developed as an adjunct of his wholesale sales agency (R. 26–27). In explanation of statements made by the manufacturer herein, to the effect that, during the years 1958 and 1959, a greater quantity of wool and cotton outerwear was sold by Paine directly to "U.S.A." retail buyers—about 64 per centum of the purchases to retail stores and 36 per centum to the importer herein (plaintiff's exhibit 1)—Mr. Savage stated that sometimes during some season the price to him would reflect the largest bulk of orders, and that at other times the prices to the "retailer" would represent the largest bulk of orders (R. 35). The witness agreed that the ability of the importer herein to supply or fill in merchandise from New York makes it easier for the manufacturer to secure placement of direct

orders (R. 43) and that it is a competitive advantage over manufacturers that do not provide such a service (R. 44).

Defendant's exhibit A is a report by Mr. James D. Carroll, senior customs representative, who undertook an investigation relative to the conditions surrounding sales of merchandise such as here involved. Said report is concerned primarily with the existence under one management of direct selling on a commission basis and wholesaling of the products of the manufacturer, as developed by the importer herein, as heretofore disclosed in the testimony of plaintiff's witness.

The issue in the case at bar is whether the prices at which the involved merchandise was sold by the manufacturer to the importer herein represent the proper dutiable value of the merchandise, or whether the price or prices at which merchandise of the kind here involved is sold directly by the manufacturer to so-called retailers should be taken as the proper value of the goods. Counsel for the plaintiff, contending for the claimed values, maintains that the importer herein is a "selected purchaser" at wholesale, within the meaning of the definition in section 402(f)(1)(B) of the Tariff Act of 1930, as amended, $supra$, and that since said importer is the only purchaser at wholesale handling the merchandise "in the ordinary course of trade," its purchase prices should be taken as the dutiable values, provided the court is satisfied that such prices "fairly reflect[s] the market value of the merchandise." In the above connection, the fact, as it appears in the record, that the importer of the merchandise in question received a commission from the exporter on all sales made by the latter to other United States buyers (R. 8; plaintiff's exhibit 1, paragraph 7), does not, in my opinion, control the determination of the issue in this case. The fact of the matter is that purchasers other than the importer herein were able to buy directly from the manufacturer for delivery to their stores or shops (R. 9). Such other purchasers were, in my opinion, "purchasers at wholesale" within the definition of the term, as it appears in section 402(f)(1)(A) and (3) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, that is, they were embraced within the category of the secondary definition of the term "purchasers at wholesale," namely, "other purchasers for resale who buy in the usual wholesale quantities" (section 402(f)(3)). Accordingly, these sales by the manufacturer to the "retailers" are properly within the provisions of section 402(f)(1)(A), as amended, $supra$, and should be taken as the basis of appraisement of the involved merchandise. This conclusion, in my opinion, is supported by relevant facts referred to below.

It appears from the record in the case at bar that while it was the practice for the importer's firm to take delivery of all merchandise ordered by it from the manufacturer and to be responsible therefor,

the manufacturer reserved the right to take from the importer's orders, so-called "bulk production" orders, enough of the goods to satisfy the requirements of a customer who went abroad to England to obtain from the manufacturer a quick delivery of merchandise such as is here imported. (R. 15–16.) Plaintiff's witness admitted that this was an added service given to direct buyers by the manufacturer and helped to benefit his trade (R. 16). While it may be that the importer's sales arrangements with the shipper were normal and ordinary as between them, such arrangements to be conclusive as to a finding of "ordinary course of trade" in the determination of value must be that which is normal in the trade such as here generally. *Chr. Bjelland & Co., Inc.* v. *United States*, 45 Cust. Ct. 435, Reap. Dec. 9753. The record does not disclose that the latter situation was prevalent in the case at bar. It would appear that sales to the "retailers," as heretofore noted, were "in the ordinary course of trade" and should be considered in determining the value of the merchandise here imported. Sales to retailers for resale, along with sales to other classes of purchasers, should be considered in determining the usual wholesale quantity. *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093.

Counsel for the plaintiff maintains that it is "not unusual for a foreign shipper to have one or more agents operating in exclusive areas, and to give that agent a commission on sales made by the shipper directly to a user located in that area" (plaintiff's brief, pages 2–3). However, the very fact that an exclusive agency existed between the manufacturer and the importer herein negates, in my opinion, a finding that the sales made to the importer by the involved manufacturer were at prices given to "*all*" purchasers at wholesale." [Italics supplied.] (Section 402(f) (1) (A).) The record shows, however, that sales of merchandise similar to that imported were made by the manufacturer to other American buyers, specifically to so-called "retailers."

Section 402(f) (1) (A) and (3) provides that:

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; *or, if there are no such purchasers,* then all other purchasers for resale who buy in the usual wholesale quantities * * *. [Italics supplied.]

Having found that the sales made to the importer herein do not meet the requirements, as outlined in the definitions in section 402(f) (1) (A), *supra*, as defined in the first portion of subdivision (3) of section 402(f), *supra*, recourse must, accordingly, be had to the provisions of section 402(f) (1) (A), *supra*, as further defined in the second portion of subdivision (3) of section 402(f), *supra*, namely, "all other purchasers for resale who buy in the usual wholesale quanti-

ties." The sales made by the manufacturer herein to the so-called retailers meet the latter characterization.

The record in this case indicates that the greatest aggregate volume of merchandise was sold by the exporter herein direct to United States buyers other than the importer. This situation, in my opinion, establishes the "usual wholesale quantity" to be that quantity purchased by the direct buyers. Such a conclusion is consonant with the method outlined in section 402(f)(5) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, namely:

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

Counsel for the plaintiff, in commenting upon the claimed interpretation made by the Bureau of Customs as to the application to imported merchandise of the "greatest volume of sales" rule in determining "usual wholesale quantities," states (brief, p. 10):

We contend that the basic reasoning of the Bureau in applying the "greatest volume" theory to the case now before the court is wrong; that it is not specifically authorized; and that (although this theory may be the right approach in resolving the problem when more than one price is given to wholesalers) it can not properly be applied when there is one firm price to wholesalers, and another different firm price to retailers.

The above contention, in my opinion, is without merit.

On the record here presented, I find as facts:

1. The merchandise involved herein consists of wool sweaters, other than cashmere, exported from England on or about January 16, 1959.

2. That, on or about the date of exportation, the importer herein was the exclusive agent of the manufacturer for the distribution of the manufacturer's merchandise in the United States.

3. That the prices paid by the importer herein for the involved merchandise were not the prices at which such or similar merchandise was freely offered or sold to all purchasers at wholesale in the ordinary course of trade.

4. That, on or about the date of exportation, the manufacturer herein freely sold its merchandise to other buyers in the United States in the usual wholesale quantities and in the ordinary course of trade at list prices, less 3 per centum cash discount.

I find as conclusions of law:

1. That export value, as that value is defined in section 402(b) and section 402(f)(1)(A) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for the determination of the value of the merchandise here involved.

2. That the proper export value for the merchandise under consideration is represented by the appraised value in each case.

Judgment will be entered accordingly.