(R.D. 11672)

Inter-Maritime Forwarding Co., Inc. *v.* United States

Entry No. 467363.

(Decided June 19, 1969)

*Allerton deC. Tompkins* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Watson, Judge: This is an appeal for reappraisement of certain cashmere sweaters, invoiced as "Cavendish Pure Cashmere Cardigans", exported from England on August 28, 1963. Plaintiff in this case is the customhouse broker for the ultimate consignee of the merchandise which was imported for the account of Frank L. Savage, Inc., New York, N.Y. Said merchandise is specified on the "Final List", T.D. 54521, and is, accordingly, subject to appraisement under the provisions of section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The sweaters in question were appraised on the basis of "cost of production" as set forth in section 402a(f) of the tariff act, as amended, at £0.98.10 each, plus packing. The importer claims the merchandise properly dutiable on the basis of export value, as set forth in section 402a(d) of said act, as amended, at £0.94.0 each, less 3 percent. The parties by stipulation have agreed in effect that there is no "foreign" value (section 402a(c) of the tariff act, as amended) for the imported merchandise.

The statutes herein involved are as follows:

Section 402a(f) of the Tariff Act of 1930, as amended:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Section 402a(d) of the Tariff Act of 1930, as amended:

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff herein specifically claims that the imported merchandise was "freely offered for sale to all purchasers in the ordinary course of trade" within the meaning of section 402a(d) of the tariff act, as amended, *supra.*

The record in the case consists of the oral testimony of two witnesses called by the plaintiff, a representative sample of the merchandise (plaintiff's exhibit 1) and an affidavit of F. Alan Paine, managing director of W. F. Paine Ltd., England (since September 15, 1966 trading as Alan Paine Ltd.), shipper of the merchandise in question (plaintiff's exhibit 2).

Mr. F. Alan Paine, the affiant in plaintiff's exhibit 2, testified substantially as follows:

That since 1947, Frank L. Savage, Inc., New York, U.S.A., hereinafter referred to as Savage, has been the exclusive selling

agent in the United States for the wool and cotton outerwear garments manufactured by Paine; that the relationship between Paine and Savage has been only that of buyer and seller; and that Paine imposes no restrictions upon Savage, or any other U.S.A. buyer as to disposition or use of said outerwear.

That since 1961, Paine has made only two kinds of sales of wool sweaters (including cashmere sweaters) to U.S.A. buyers under its brand name "Alan Paine"; (a) large quantity orders to Savage and (b) smaller orders in retail quantities to retail stores or to those who sell at retail in the U.S.A., directly to the user or consumer.

That in making sales of "Paine" outerwear (including cashmere sweaters) to U.S.A. retail stores or to those who sell at retail in the U.S.A., Paine has never imposed any restrictions whatsoever upon the said retail buyers.

That since 1947, Savage has purchased "Alan Paine" cashmere sweaters from Paine in wholesale quantities of 300 garments or more per style; that "Alan Paine" cashmere sweaters are normally sold by Paine to the U.S.A. retail trade in quantities of one-half dozen or more per style; and that no discount off the price is given by Paine to any U.S.A. retail buyer who places an order for many dozen sweaters.

That Paine freely sold and offered for sale "513 Cavendish" cashmere sweaters at 94 British shillings each, with no discount for large quantity purchases, subject to 3 percent discount, payable in 10 days.

That Savage normally stocks a supply of men's cashmere sweaters, and these stocks are available to fill the reorder requirements of retail stores for immediate delivery, as well as to supply those stores who prefer not to import themselves.

That the sweaters produced by Paine are "quality brand name" products and the supply of such cashmere sweaters are limited; that sales are confined to "good" customers who cater to the so-called "quality" trade.

That the demand of the retail shops exceeds the limited supply, and Paine is not able to furnish "Alan Paine" sweaters to all U.S.A. retail shops.

The plaintiff called as witnesses, Mr. Frank L. Savage, president of Frank L. Savage, Inc., consignee of the shipment herein involved, and Mr. Gotthold Kuehnert, president of A. Kuehnert & Company, sole representatives of J & D McGeorge of Scotland, dealers in cashmere sweaters. Their testimony will be hereinafter referred to as is deemed pertinent in the determination of the issue before me.

Plaintiff claims that the imported merchandise is "freely offered for sale to all purchasers (U.S. retail stores) * * * in the ordinary course of trade" within the meaning of section 402a(d) of the Tariff Act of 1930, as amended. The defendant in this case maintains that the involved merchandise was not freely offered to all purchasers as required by the statute.

Plaintiff's witness, Savage, testified that he was the exclusive agent of the shipper in the United States to sell the production of the latter directly from the factory to stores in this country. He stated that he also bought stock in wholesale quantities, "which I then sell out of our importing firm in New York" (R. 7). He further stated that the shipper also sells directly to retail outlets in New York through him and that buyers who go to England would "be able to buy from Alan Paine in London" (R. 9–10); and that in such direct sales by the shipper in England to stores in the United States, he, Mr. Savage, is paid a commission, even though he has nothing to do with such purchase or sale.

Plaintiff's witness stated that the shipper imposes no restrictions upon the retail buying stores in the United States (R. 13) and further stated that he himself was not restricted in any way "at what price I should sell merchandise that I have bought from Alan Paine to resell it to the retail stores" (R. 16–17). Specifically, with respect to our present determination, Mr. Savage testified that limitation of supply affects his ability to sell in the United States because "we always wish to supply our regular customers with cashmere in the quantities that they require" (R. 19). While plaintiff's witness stated that he did not have enough supply to go around "to develop new accounts", he did state that "there are exceptions", possibly one or two in a year, "where there might be a new development of quality trade where we would wish to develop, where we can" (R. 19–20). The witness further stated there was a "concentration of orders" for cashmere sweaters in a certain period, shortly after one Christmas trade season is complete, and that orders are placed in the following January and February for delivery of supplies in August, and that such limited supply situation has prevailed "since I arrived here in 1940" (R. 21–22). Mr. Savage, who had stated that in effecting sales for his company, he was looking for "outlets of people who handle quality trade" when asked what he meant by "quality trade", stated:

I think the best way of describing quality trade is the trade that would fit into the production of Alan Paine [R. 24].

Plaintiff's witness stated, in speaking of "quality trade", he had reference to certain stores "favorable to the quality that he [Alan Paine] makes" (R. 25–26). Mr. Savage admitted that his firm determines whether or not a prospective buyer was in the "quality trade" (R. 26), and that with respect to customers who buy direct from the shipper, the shipper also would determine who are the quality trade customers (R. 28). He further testified that he was "not looking to go beyond the quality store trade" for the outlet of his sweaters, and that "we are waiting to get the supply to develop the trade" (R. 31–32).

Mr. Gotthold Kuehnert, testifying for the plaintiff, stated that his company was the sole selling agent in this country for J & D

McGeorge, heretofore identified. He stated in effect that his relationship with his supplier as sole selling agent, the manner of conducting business with them, as well as the fact that McGeorge also sells directly to the United States retail trade, is basically the same as that testified to by Mr. Savage (R. 40–41). His experience with respect to "concentration of orders", was substantially the same as that previously noted by plaintiff's prior witness (R. 43). Mr. Kuehnert testified that by reason of the limited supply of cashmere sweaters, his company is confined in making sales "more or less" to established customers, and that he did not think there was anything unusual about that type of limitation in his line of business (R. 45).

Mr. Kuehnert further testified that "the established customers more or less take all our production, and it doesn't give us a chance to go out and offer that merchandise to some other stores", while they *"may be desirable as far as we are concerned"* (R. 44–45, emphasis supplied). On cross-examination, in explanation of the desirability of customers "as far as we are concerned", the witness stated:

> Well, credit-wise, that is a big count, * * * if it is a *quality store*. If it fits in with the line of shirts, line of clothing * * *, that is a desirable store for the outlet of good merchandise [R. 47].

Mr. Kuehnert testified that he, too, determines what is a "quality" store. He stated that if a particular buyer, who did not meet the characteristic of a quality store, in his estimation, came to him for merchandise, he could not sell him if he did not come to see him in time, because "we are sewed up by the end of February" and that even if the customer comes in in October before the orders are "concentrated", he could not supply him because he first has to take care of his "established trade" (R. 47). The witness stated that he would supply others than this established trade "if we can" (R. 47–48). Plaintiff's witness further testified that there were at least a half dozen manufacturers of cashmere sweaters in the British Isles, other than McGeorge and Alan Paine, including "three or four big ones" (R. 55).

Plaintiff, in this case, not only has the burden of overcoming the presumptively correct dutiable value for the involved merchandise but must affirmatively establish that the claimed export value (section 402a(d) of the Tariff Act of 1930, as amended) is correct. Specifically, under the circumstances of this case, plaintiff must establish that the involved merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and "in the ordinary course of trade".

Two cases involving the same type of merchandise, manufacturer, and importer, were previously decided by this court. In *Inter-Maritime Fwdg. Co., Inc.* v. *United States*, 48 Cust. Ct. 670, Reap. Dec. 10265 (1962), affirmed in 51 Cust. Ct. 529, A.R.D. 162 (1963), the trial court

and the appellate term sustained the appraiser's return of export value predicated upon the manufacturer Paine's prices to retail purchasers. The record therein disclosed that while it was the practice for the importer's firm to take delivery of all merchandise ordered by it from the manufacturer and to be responsible therefor, the manufacturer reserved the right to take from the importer's orders, so-called "bulk production" orders, enough of the goods to satisfy the requirement of a customer who went abroad to obtain from the manufacturer a quick delivery of merchandise. Plaintiff's witness in that case admitted this to be an added service given to direct buyers by the manufacturer which helped benefit his trade. In passing upon the question whether such an arrangement constituted the "ordinary course of trade", the court in Reap. Dec. 10265, *supra*, page 674, stated:

> * * * While it may be that the importer's sales arrangements with the shipper were normal and ordinary as between them, such arrangements to be conclusive as a finding of "ordinary course of trade" in the determination of value must be that which is normal in the trade such as here generally. *Chr. Bjelland & Co., Inc.* v. *United States*, 45 Cust. Ct. 435, Reap. Dec. 9753. * * *

In affirming the decision of the single judge in Reap. Dec. 10265, *supra*, the court in A.R.D. 162, pages 535–536, stated:

> * * * evidence of the manner in which one exporter conducts his business does not necessarily establish what is normal or usual in the trade under consideration. The practices of others engaged in the same class of trade are relevant and material elements in creating a picture of what constitutes the ordinary course of trade in the purchase and sale of the class of merchandise involved in an appraisement proceeding.
>
> * * * * * * *
>
> In any event * * * the record is barren of affirmative proof of how other British shippers of men's woolen sweaters conducted their businesses with American purchasers. * * *

In the second previously decided case (*Inter-Maritime Forwarding Co., Inc.* v. *United States*, 56 Cust. Ct. 670, R.D. 11157 (1966) affirmed in 50 Cust. Ct. 930 A.R.D. 232 (1968)) involving the same type of merchandise, it appears that counsel for the importer, after making reference to the fact that the court in Reap. Dec. 10265 and A.R.D. 162, *supra*, held that the plaintiff had not established that the practices between Frank L. Savage, the importer, and Paine of Godalming, were normal and in "the ordinary course of trade", stated that the testimony therein (R.D. 11157) would be directed "primarily toward clarifying and overcoming that deficiency"—to establish by satisfactory evidence that others in England who are engaged in the same class of trade as Paine have adopted the same practices as Paine in doing business with

United States purchasers so as to constitute such practice as in the ordinary course of trade. In disposing of plaintiff's contention that the practices testified to were in the "ordinary course of trade", the court in R.D. 11157, page 680, stated:

> * * * The record herein does not establish that the six named other large manufacturers of such or similar wool sweaters in England disposed of their products to the United States in substantial accord with the practice employed in such trade by either Paine, McGeorge, Jaeger, or Monroe. Accordingly, without such evidence it is impossible to find that the "ordinary course of trade" generally is that practiced or indulged in by either of the above-named exporters.

In the case at bar, the testimony also indicates that there were at least six manufacturers of cashmere sweaters in England, other than Alan Paine or McGeorge, including three or four big ones such as Pringle, Braemar and Ballantyne (R. 55). The record in this case contains no evidence that these firms indulged in the same practices as were attested to by plaintiff's witness Paine in his affidavit or by Messrs. Savage and Kuehnert in their oral testimony. Accordingly, in my opinion, plaintiff has failed to prove that the arrangements between the exporter and the importer, Savage, were in the "ordinary course of trade".

In the present case, we have a situation where sales were made by Savage to certain selected customers. While plaintiff maintains that such sales to restricted customers were by reason of limited supply, it is to be noted that the record shows that plaintiff's witness, Savage, and the shipper, developed several new accounts every year, and if they found a "quality" trade store, favorable to Alan Paine, they "would be happy to seek such a customer" (R. 25). The attitude of restriction of customers is further established in the affidavit of Mr. Alan Paine (plaintiff's exhibit 2) wherein, paragraph 10, Mr. Paine states to the effect that Paine produces a "quality" product and that preference must be given to those "retail establishments which historically have successfully handled them with respect to Paine's reputation for quality and who have *proved that they will not cheapen the 'Alan Paine' brand name by treating the brand name with disrespect or by selling at under cost prices*" (exhibit 2, page 7, emphasis supplied). While the efforts of the manufacturer to produce a product to be distributed in only such stores as the manufacturer characterizes as a "quality trade" store may be a good economic business practice, nevertheless, in my opinion it constitutes such a restriction as to preclude the finding of a freely offered price to all purchasers with respect to the involved merchandise.

In *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147 (1962), there was involved *inter alia*, the question whether the fact that the exporter did not sell certain automatic pistols indiscriminately

to any buyer but only to some licensed wholesale and retail merchants, supported a finding that the exporter freely offered the merchandise to all who cared to buy and who were good credit risks. In supporting the finding of the trial court that the merchandise was sold under restrictions, the court in A.R.D. 147, page 501, stated:

> * * * The selection of particular customers to whom the merchandise is to be sold constitutes a restriction which precludes the existence of a free market for such merchandise. *United States* v. *Malhame & Co.*, 24 C.C.P.A. (Customs) 448, T.D. 48911. * * *

On the basis of the record presented in this case, I am of the opinion and hold that the sales made by Savage to the retailers were restricted sales, and that the merchandise under consideration was not freely offered for sale to all purchasers in the usual wholesale quantities and in the "ordinary course of trade" for exportation to the United States.

The court finds as facts:

1. The merchandise herein consists of cashmere sweaters exported from England on or about August 28, 1963.

2. The merchandise is enumerated on the Final List (T.D. 54521) and is accordingly subject to appraisement under section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The merchandise was appraised on the basis of cost of production pursuant to section 402a(f) of the tariff act, *supra.*

4. On or about the date of exportation such merchandise was not freely offered for sale in the principal markets of England for home consumption.

5. On or about the date of exportation such merchandise was not freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

The court finds as matters of law:

1. The selection of customers to whom the manufacturer offered his merchandise constituted such a restriction as to preclude the existence of free offers to all purchasers in the ordinary course of trade.

2. Cost of production as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the appraisement of the merchandise herein.

3. The cost of production is represented by the appraised values.

Judgment will be rendered accordingly.