INTER–MARITIME FORWARDING CO.,
Inc., Appellant,

v.

UNITED STATES, Appellee.

A.R.D. 278; Reappraisement R65/14035.

United States Customs Court,
Second Division, Appellate Term.
Oct. 19, 1970.

Allerton deC. Tompkins, New York City, for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Morris Braverman, New York City, trial attorney), for appellee.

Before RAO, FORD, and NEWMAN, Judges.

NEWMAN, Judge:

This is an application for review by plaintiff below from the decision and judgment of Watson, J., the trial judge, in Inter-Maritime Forwarding Co., Inc. v. United States, 62 Cust.Ct. 964, R.D. 11672 (1969).

The articles involved are certain cashmere sweaters exported from England on August 28, 1963, and entered at the port of New York. These imported sweaters were appraised by the Government at 98 shillings, 10 pence each (British currency), plus packing, on the basis of "cost of production," as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.[1] The importer appealed for reappraisement claiming "export value," as defined in section 402a(d), as the proper basis for appraisement, and claiming that the correct dutiable value was 94 shillings each, less 3 percent.

Consequently, the appraised value and the claimed dutiable value are set forth below:

| Appraised Value British Sterling—Each | Claimed Value British Sterling—Each |
|---|---|
| 98 shillings 10 pence, plus packing | 94 shillings, less 3 percent |

For the reasons explained hereinafter, the trial court sustained the appraisement and the plaintiff below has appealed from that decision. The facts pertinent to our review are set forth *infra*.

## THE STATUTES

Section 402a(d) of the Tariff Act of 1930, 46 Stat. 709, as renumbered by the Customs Simplification Act of 1956, 70 Stat. 943:

(d) *Export Value.*—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402a(f) of the Tariff Act of 1930, 46 Stat. 709, as renumbered by the Customs Simplification Act of 1956, 70 Stat. 943:

(f) *Cost of Production.*—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such

---

1. Under the Customs Simplication Act of 1956, 70 Stat. 943, substantial changes were effected in the customs valuation procedures prescribed under the Tariff Act of 1930. The Secretary of the Treasury was required to compile a so-called "Final List" of all articles, which under the new valuation methods provided by the Act would have resulted in the dutiable value of 95 percent or less of the values at which they were actually appraised during the fiscal year ended June 30, 1954. The "old" valuation provisions, redesignated "Sec. 402a. Value (Alternative)," continue to apply to the appraisement of all articles specified on the list, published in T.D. 54521. Cashmere sweaters are specified on the "Final List," and hence the "old" valuation provisions are applicable in this case.

cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

## THE ISSUE

The issue is whether the cost of production determined by the appraiser, or the export value claimed by appellant, is the proper dutiable value of the sweaters.

We have determined that the trial judge correctly found that plaintiff failed in its burden of proof under section 402a(d), and we affirm the decision below.

## THE RECORD

The record consists of: the oral testimony of two witnesses called on behalf of appellant, a representative sample of the imported sweaters (plaintiff's exhibit 1), an affidavit (plaintiff's exhibit 2), and the official papers (received in evidence without being marked).

## THE FACTS

The imported sweaters were manufactured by W. F. Paine Ltd., Godalming, Surrey, England; the ultimate consignee was Frank L. Savage, Inc., New York,[2] the manufacturer's exclusive selling agent in the United States for wool and cotton outerwear garments. As Paine's selling agent, the Savage firm sold the cashmere sweaters to certain retail stores in the United States for which it received a commission. These retail stores could also purchase directly from Paine in England, in which event Savage still received the usual commission. Sales to the retail trade were made at uniform list prices, less 3 percent for payment within ten days. In addition to acting as Paine's exclusive selling agent in the United States, Savage purchased cashmere sweaters from Paine for its own account and as a wholesaler-distributor sold them to retail stores.

"Alan Paine" cashmere sweaters are regarded by the manufacturer and Savage as high quality prestige garments. They are manufactured in a limited quantity for each selling season (January to April), and are offered and sold exclusively to certain retail stores regarded as "quality trade" outlets.

Paragraph 10 of the affidavit executed by F. Alan Paine, managing director of the manufacturer and exporter, recites the following pertinent facts:

10. The "Alan Paine" Cashmere sweaters produced by Paine are styled and manufactured with utmost care with the best materials so as to produce a quality brand name product, and Paine is able to produce only a limited supply of such carefully produced "Alan Paine" outerwear. * * * Paine's production, though increasing in volume each year, is sold to capacity for all qualities of wool and Cashmere outerwear. Due to Paine's limited capacity for producing Cashmere brand name quality sweaters, Paine is not able to fill the demand in the U.S.A. for these prestige garments. Paine has a world-wide reputation for producing a quality

2. The appellant, Inter-Maritime Forwarding Co., Inc., is a customhouse broker, who entered the merchandise for the account of the Savage firm, and is the party who filed the appeal for reappraisement below.

product and Paine makes every effort to protect and maintain that reputation. There is a world-wide demand for these quality products, and the limited supplies must necessarily be allocated among the consuming countries of the world, including England and the U.S.A. As a result, preference must be given to good customers, such as those retail establishments which historically have successfully handled them with respect for Paine's reputation for quality and who have proved that they will not cheapen the "Alan Paine" brand name by treating the brand name with disrespect or by selling at under cost prices. (This is done by some stores as an advertising scheme to attract customers who naturally are looking for bargain prices for quality products). Due to increased production, Paine has been able to make only a very few sales to new customer retail shops in the U.S.A. other than to the above-mentioned retail shops who have historically handled the "Alan Paine" brand name over a period of years, and those very few new sales have been confined to reputable quality goods shops with good credit ratings in new shopping centers or new shopping areas which cater to consumers desiring brand name quality outerwear. The demand of the foregoing U.S.A. retail shops exceeds the limited supply, with the result that Paine is not able to furnish its "Alan Paine" sweaters to all U.S.A. retail shops, even to some of the best shops with excellent reputations.

According to plaintiff's witness Frank L. Savage, president of the ultimate consignee, "quality trade" stores would be like a DePinna, Rogers-Peet, Abercrombie & Fitch, or a Saks Fifth Avenue. In determining whether a potential customer is a "quality trade" outlet, Savage ascertains the quality of shirts and other clothing the store handles, and that helps him decide whether or not to sell to the store. To Savage, "quality trade" is "trade that would fit into the production of Alan Paine" and is "[f]avorable to the quality that he [Paine] makes" (R.24–25). New accounts would have to "fit in with a pattern" (R.29).

Mr. Savage testified that a limitation of supply affected his ability to sell in the United States, because fundamentally "we always wish to supply our regular customers with cashmere in the quantities they require" (R.19).

Savage further stated there had never been, nor would there ever be, a sufficient supply of Alan Paine sweaters to sell to customers who were not "quality trade" accounts. Moreover, Savage testified (R.31):

> Q. You, therefore, are not looking to go beyond the quality store trade for the outlet of your sweaters?—A. That is quite correct.

Gotthold Kuehnert, president of A. Kuehnert & Company, the sole selling agent of J & D McGeorge of Scotland, a manufacturer of cashmere sweaters, was called as plaintiff's second witness. It appears that the McGeorge firm also sells cashmere sweaters to the retail trade in the United States. Because of the limited supply of such sweaters, Kuehnert "more or less" confined his sales to certain established customers, viz., quality stores; and in Kuehnert's opinion, such limitation was not unusual in his line of business respecting "quality produced merchandise" (R.46). Kuehnert testified that "the established customers more or less take all our production, and it doesn't give us a chance to go out and offer that merchandise to some other stores," while they "may be desirable as far as we are concerned" (R.44–45).

## THE DECISION BELOW

The trial judge found that sales of the cashmere sweaters were made to certain selected customers, viz., "quality trade" stores; that sales were restricted to such customers; and that such restriction precluded the existence of free offers to all purchasers in the ordinary course of trade, as required by section

402a(d). Hence, the trial court affirmed the appraisement on the basis of cost of production under section 402a(f).

## "FREELY OFFERED FOR SALE TO ALL PURCHASERS"

Appellant contends here, as below, that the imported merchandise was "freely offered for sale to all purchasers [retail stores] * * * in the ordinary course of trade" within the meaning of section 402a(d). Initially, we shall consider the expression in the statute: "freely offered for sale to all purchasers."

■ It is well established that where sales are confined to selected purchasers or classes of purchasers, the merchandise is not "freely offered for sale to all purchasers" and the selling prices do not represent statutory value. See e. g., United States v. Malhame & Co., 24 CCPA 448, T.D. 48911 (1937); United States v. H. W. Robinson & Co. et al., 19 CCPA 274, T.D. 45436 (1932); Goldfarb et al. v. United States, 58 Cust.Ct. 816, A.R.D. 220, 268 F.Supp. 461 (1967); General Wool Co., Inc., et al. v. United States., 56 Cust.Ct. 730, R.D. 11177 (1966), aff'd 60 Cust.Ct. 970, A.R.D. 240 (1968); United States v. Berben Corporation, 49 Cust.Ct. 497, A.R.D. 147 (1962), dec. on rem., 51 Cust.Ct. 314, R. D. 10552 (1963).

■ The issue to be resolved, then, is whether the foregoing rule is applicable where, as here, the supply of cashmere sweaters was limited and the manufacturer confined its sales to so-called "quality trade" customers. We are of the opinion that the statutory language "freely offered for sale to all purchasers" need not be construed differently where the supply for sale is limited, as where such supply is unlimited.

True, it is that the statutory expression under consideration does not require the seller to actively solicit all potential customers. Nevertheless, the statute does require that all persons who care to buy the seller's goods in the ordinary course of trade shall be on an equal footing to purchase them, whether the supply be limited or unlimited.

The following comment in Rico, Inc. v. United States, 44 Cust.Ct. 788, 793, A. R.D. 121 (1960), aff'd 48 CCPA 110, C. A.D. 773 (1961), succinctly states the applicable rule:

* * * We do not construe the expression "freely offered for sale to all purchasers" as requiring a seller actively to seek out and sell to all potential buyers. Its intendment is fulfilled when *every bona fide purchaser* of the usual wholesale quantities in the ordinary course of trade *has a like opportunity to buy under equal terms and conditions.* [Emphasis added.]

And in D. N. & E. Walter & Co. v. United States, 38 Cust.Ct. 634, 636, R.D. 8790 (1957), the court observed:

* * * Such offers to all who might care to buy, of course, could conceivably result in the sale of the entire available quantity to one purchaser, but it seems clear, that to be within the terms of the statute, there must be an offer to the buying public, no matter what the result of the offer may be.

In a case where no offer was made to anyone other than a firm which had an "entire output" contract with the seller, the court held that the merchandise was not freely offered for sale to all purchasers within the meaning of the export value provision. D. N. & E. Walter & Co., *supra.* Similarly, in Butler Brothers v. United States, 25 Cust.Ct. 404, 408, R.D. 7872 (1950), the court commented:

* * * It is difficult to understand the basis for the plaintiff's contention that "such" merchandise was freely offered for sale to all purchasers * * * where the evidence clearly shows that the entire production of the exporter was restricted to the plaintiff in which event it could have nothing to sell. * * *

We see no real distinction in principle between the situation in the foregoing

cases where the sellers restricted the sale of their entire output to a single purchaser, and the facts in the instant case which show that the manufacturer restricted the sale of its entire output of cashmere sweaters to selected retail outlets. In both situations, "[t]here simply was no offer of the merchandise for sale to all who might care to buy", D. N. & E. Walter & Co., *supra,* at 636.

The definition of export value in section 402a(d) certainly does not contemplate a manufacturer producing a limited supply of goods and then engaging in restrictive marketing practices which tend to thwart the normal effects of competition among potential buyers. If a seller that has a limited production of goods is permitted under section 402a(d) to select which among his potential customers may have an opportunity to purchase the goods, then the phrase "freely offered for sale to all purchasers" becomes utterly meaningless.

In brief, while the manufacturer's limited ability to supply the demand for cashmere sweaters would not in itself preclude a finding that the merchandise was freely offered for sale to all purchasers, the record is clear that the limited supply was available only to such retail stores which the Paine firm regarded as "quality trade" outlets. While such selection of purchasers may have been a sound marketing practice under the circumstances, it constitutes such restriction on the offer and sale of the goods as to preclude a finding that the merchandise was freely offered for sale to all purchasers under section 402a(d). Stated differently, Paine was entitled to follow the restrictive sales policy described herein; but appellant cannot prevail on its claimed export value, since the statutory definition in section 402a(d) has not been met.

"ORDINARY COURSE OF TRADE"

▆ Appellant argues, in effect, that since short supply and customer selection were normal and usual in the British cashmere sweater trade, the merchandise was freely offered for sale to all purchasers *in the ordinary course of trade.*

First, we are unable to conclude that appellant's evidence was sufficient to establish that short supply and restriction of sales to "quality trade" stores in the United States were a normal and usual condition and practice in the British export trade dealing in cashmere sweaters. Secondly, even assuming *arguendo* that appellant's evidence was sufficient to establish "the ordinary course of trade," we do not think that such phrase may be construed to permit an export value to be predicated upon sales and offers restricted to selected customers under the circumstances of this case.

In United States v. Richard & Co., 15 Ct.Cust.Appls. 143, T.D. 42216 (1927), the court of appeals observed (at 145–146):

> * * * Even if it be conceded that the *ordinary course of trade* may be determined by the usage in a minor fraction thereof, it certainly can not be said that the merchandise is being *freely offered for sale* when it is offered to certain purchasers only * * * [Emphasis copied.]

Again, in United States v. H. W. Robinson & Co. et al., *supra,* English manufacturers of silk tie squares by agreement restricted their sales to wholesalers only. The importer contended that the manufacturers' price in sales to wholesalers represented the proper foreign value since the goods were freely offered to all wholesale purchasers in the usual wholesale quantities and in the ordinary course of trade. The Government argued that the manufacturer's price in sales to wholesalers did not represent the foreign value inasmuch as the goods were not freely offered to all purchasers, but were only offered to one class of purchasers, viz., wholesalers.

The appellate court held in *Robinson* that, although it may be the "ordinary course of trade" for the manufacturers to restrict their sales to wholesalers, this

was not the ordinary course of trade to which the statute refers. The court emphasized (at 276):

> * * * It must be remembered that the statute provides for "the ordinary course of trade" in which such or similar goods are "freely offered for sale to all purchasers" in the usual wholesale quantities. Since in the sales by the manufacturers the goods were not offered to all purchasers, the sales price should not be accepted as the proper foreign value.

See also United States v. Blake-Moffitt & Towne, Inc., et al., 30 Cust.Ct. 634, A.R.D. 23 (1953); modifying 27 Cust.Ct. 485, R.D. 8064 (1951).

In connection with the issue of "ordinary course of trade," appellant cites Inter-Maritime Forwarding Co., Inc. v. United States, 60 Cust.Ct. 930, A.R.D. 232 (1968), and Inter-Maritime Forwarding Co., Inc. v. United States, 51 Cust.Ct. 529, A.R.D. 162 (1963), which were discussed by the court below. Appellant contends that *if* these decisions are pertinent to the present case, they support its claimed value based upon sales to the retail trade.

We do not agree.

In the two prior *Inter-Maritime* cases, the ultimate consignee was also Frank L. Savage, Inc. The court sustained the appraisements in the prior cases on the basis of export value predicated upon Paine's prices to the retail purchasers. However those decisions do not support appellant's claim here, inasmuch as in neither of them were the instant cashmere sweaters involved; and moreover, there was no evidence therein, that sales to retail purchasers were restricted. Plainly, such restriction is the circumstance in the present case.

In view of the foregoing, we conclude that appellant has failed to establish its claimed export value; and that the appraisement on the basis of cost of production, being presumptively correct, should be sustained.

The findings of fact and conclusions of law of the trial judge are adopted and incorporated herein by reference. Judgment affirming the decision below will be entered accordingly.