59 CCPA

**INTER–MARITIME FORWARDING CO., Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5442.**

United States Court of Customs and Patent Appeals.

Feb. 24, 1972.

Allerton deC. Tompkins, New York City, atty. of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for United States.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the judgment of the United States Customs Court,

Second Division, Appellate Term,[1] affirming the judgment of the single judge sitting in reappraisement.[2] The merchandise involved consists of cashmere sweaters imported from England on or about August 28, 1963. Both at trial and on appeal these goods were held properly appraised on the basis of cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Appellant claims that the proper basis of dutiable value is export value, as defined in section 402a(d) of the act.

Appellant does not contend that the cost of production basis of appraisement is wrong if appraisement on the basis of export value, as claimed, is not possible. Therefore, the sole issue before us is whether the statutory elements of export value have been met. More particularly, the question is whether appellant has shown that the imported cashmere sweaters are "freely offered for sale to all purchasers * * * in the ordinary course of trade," as called for in § 402a(d), which reads in full:

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The record reveals that: the imported sweaters were manufactured by W. F. Paine Ltd. (since September 1966 trading as Alan Paine Ltd.) ; the ultimate consignee was Frank L. Savage, Inc., the manufacturer's exclusive selling agent in the United States; and appellant is a customhouse broker who entered the merchandise for the account of the Savage firm. The testimony of the various witnesses indicates that "Alan Paine" cashmere sweaters are regarded as high quality articles, they are manufactured in a limited quantity for each selling season, and they are offered and sold exclusively to certain "quality trade" stores. This is further evidence by the affidavit of F. Alan Paine, managing director of the manufacturer and exporter, where he stated in pertinent part:

* * * The "Alan Paine" Cashmere sweaters produced by Paine are styled and manufactured with utmost care with the best materials so as to produce a quality brand name product, and Paine is able to produce only a limited supply of such carefully produced "Alan Paine" outer wear. * * * Due to Paine's limited capacity for producing Cashmere brand name quality sweaters, Paine is not able to fill the demand in the U.S.A. for these prestige garments. * * * As a result, preference must be given to good customers, such as those retail establishments which historically have successfully handled them with respect for Paine's reputation for quality * * *. Due to increased production, Paine has been able to make only a very few sales to new customer retail shops in the U.S.A. other than to the above-mentioned retail shops who have historically handled the "Alan Paine" brand name over a period of years, and those very few new sales have been confined to reputable quality goods shops * * *. The demand of the foregoing U.S.A. retail shops exceeds the limited supply, with the result that Paine is not able to furnish its "Alan Paine" sweaters to all U.S.A. retail shops, even to some of

1. 65 Cust.Ct. 814, 318 F.Supp. 218, A.R.D. 278 (1970).

2. 62 Cust.Ct. 964, R.D. 11672 (1969).

the best shops with excellent reputations.

It is well established, as the Customs Court held, that where sales are confined to selected purchasers or classes of purchasers, the merchandise is not "freely offered for sale to all purchasers." United States v. Malhame & Co., 24 CCPA 448, T.D. 48911 (1937). The applicable rule was succinctly stated in Rico, Inc. v. United States, 44 Cust.Ct. 788, 793, A.R.D. 121 (1960), aff'd, 48 CCPA 110, C.A.D. 773 (1961):

We do not construe the expression "freely offered for sale to all purchasers" as requiring a seller actively to seek out and sell to all potential buyers. Its intendment is fulfilled when every *bona fide* purchaser of the usual wholesale quantities in the ordinary course of trade has a like opportunity to buy under equal terms and conditions.

We think the rule above enunciated is one of reason imbued with the element of fairness. It does not impose a harsh and undue burden on the seller in the ordinary course of trade. It simply means, as stated in *Rico*, that "all purchasers" embraces "all those who care to buy such goods in such markets."

Contrary to appellant's contentions, we do not think that a limited supply of merchandise excuses restricting sales in the manner in which the sales of the imported cashmere sweaters were restricted to select "quality trade" stores. Having a limited supply of merchandise to sell does not prevent a seller from "freely offering" his limited supply "to all purchasers" who care to buy such goods in such markets. As the court below stated:

The definition of export value in section 402a(d) certainly does not contemplate a manufacturer producing a limited supply of goods and then engaging in restrictive marketing practices which tend to thwart the normal effects of competition among potential buyers. If a seller that has a limited production of goods is permitted under section 402a(d) to select which among his potential customers may have an opportunity to purchase the goods, then the phrase "freely offered for sale to all purchasers" becomes utterly meaningless.

In brief, while the manufacturer's limited ability to supply the demand for cashmere sweaters would not in itself preclude a finding that the merchandise was freely offered for sale to all purchasers, the record is clear that the limited supply was available only to such retail stores which the Paine firm regarded as "quality trade" outlets. While such selection of purchasers may have been a sound marketing practice under the circumstances, it constitutes such restriction on the offer and sale of the goods as to preclude a finding that the merchandise was freely offered for sale to all purchasers under section 402a(d). Stated differently, Paine was entitled to follow the restrictive sales policy described herein; but appellant cannot prevail on its claimed export value, since the statutory definition in section 402a(d) has not been met.

Appellant submits, however, that such restricted sales to reputable customers are "in the ordinary course of trade" when the supply of quality cashmere sweaters is limited. In that regard, appellant argues that the statutory test of "freely offering to all purchasers" must be read in conjunction with the words "in the ordinary course of trade."

The Appellate Term of the Customs Court affirmed the trial court's holding that there was no showing that short supply and the restriction of sales to "quality trade" stores were the ordinary course of trade for British cashmere sweater producers. In addition, the Appellate Term also held that even assuming that appellant's evidence was sufficient to establish the ordinary course of trade, export value could not be predicated upon sales restricted to select customers. In support of the latter holding, the court cited United States v. Richard & Co., 15 Ct.Cust.Appls. 143, T.

D. 42216 (1927) and United States v. H. W. Robinson & Co., 19 CCPA 274, T.D. 45436 (1932).

Even assuming that there is sufficient evidence here to establish that restrictive sales practices, such as those engaged in by appellant, are common for British manufacturers and exporters of quality cashmere sweaters, it still has not been shown that such goods are "freely offered for sale to all purchasers," and, in order to qualify them for appraisement on the basis of export value, this element of section 402a(d) must be met regardless of what the ordinary course of trade may be. As we have previously noted, the sales here were restricted to select "quality trade" stores, while the goods could have been offered on a first-come first-served basis to all who were ready, willing and able to purchase them. This fact alone is enough to preclude appraisement on the basis of export value.

A thorough review of this record and consideration of the arguments of counsel and the cases cited persuade us that no export value has been proven for the subject merchandise. The burden is on appellant, and it has failed to show that the statutory elements of export value have been met. The record is convincing that the imported goods were restricted in sales to selected stores in the United States and to the importer's agent under such circumstances. Therefore, these goods were not freely offered for sale to all purchasers in the ordinary course of trade as required by § 402a(d). Accordingly, we agree with the Customs Court that export value cannot be used as the basis of appraisement and that the appraisement on the basis of cost of production, being presumptively correct, should be sustained.

The judgment of the Customs Court is affirmed.

Affirmed.